## Benglian, Jr. v. The Chronicle Publishing Co., Inc.

*H. D. Yollin*, for plaintiff.

*High, Swartz, Roberts & Seidel*, for defendants.

DITTER, J., April 3, 1968.—This case comes before the court as a result of a newspaper comment that its editor had mistaken plaintiff for a "loyal young American". Plaintiff sued for libel, and we sustained preliminary objections in the nature of a demurrer. Plaintiff has appealed our ruling, thus making the preparation of this opinion necessary.

Plaintiff's contentions are set forth in an amended complaint. By way of background, it would appear that sometime prior to April 28, 1966, a group of Haverford College students staged a demonstration, protesting the war in Vietnam. Apparently this fact was reported in The Main Line Chronicle, published by the corporate defendant and edited by Bernard Kramer, the individual defendant.

The amended complaint alleges that on April 28,

1966, the Chronicle printed a letter [1] to the editor written by persons unknown. The letter decried the behavior of the "Vietniks from Haverford" and stated that not everyone at "Haverford College has abandoned the fight for American freedom". It was purportedly signed by four Haverford students, one name being that of the plaintiff.

The amended complaint goes on to aver that on May 12, 1966, the Chronicle printed a letter actually writ-

---

[1] "HAVERFORD COLLEGE STUDENTS EQUALLY ENRAGED BY BEHAVIOR OF VIETNIKS"

"To the Editor:

"This is to let you and your readers know that not everybody at Haverford College has abandoned the fight for American freedom as a few of our community have done.

"Some of us were enraged, some of us were deeply ashamed of the behavior of the Vietniks from Haverford at Sunday's demonstration (or perhaps we should call it a commie white-wash). It, and far too many sordid accidents like it over the past few years, must be taken as a reflection of the deteriorating morals of our society, rather than as a simple indictment of the education given at Haverford.

"We are deeply grateful of the many opportunities we have had here for the improvement of our minds; we can only regret that so few of us have seemed to profit from our opportunities to learn the truth in the setting of a small liberal arts college.

"We must say of those who 'demonstrated' that they must, if possible, be reached, and given a chance to learn wherein they have erred. With so few of us to do the work, it looks like a hard job.

"In the meantime, we'll try, with our friends, to carry on as best we can.

"With thanks for your guiding influence, we remain,

VONNIE BENGLIAN, '68
ARTHUR RESARDISZ, '69
TRENTON RUEBUSH, '68
RANDALL C. WHITE, '68

Haverford College"

ten by plaintiff.[2] This letter states that the prior letter was a fake, and had not been written by any of those whose names were signed to it. Plaintiff's letter then commented that the prior letter may have been written by a "brainwashed pseudopatriot or by a muddle-

[2] "HAVERFORDIAN SAYS LETTER WAS HOAX.

"To the Editor:

"Last week the Chronicle published a letter purportedly written by four 'enraged' Haverford students: the letter is a fake.

"Neither Trenton Ruebush nor I wrote that letter; we knew nothing about it until after it was published. (As a matter of fact, Trenton and I met each other for the first time after we heard about what had happened.) Randy White no longer goes to school here and Arthur Resardisz, to our knowledge and to the Registrar's knowledge, does not exist.

"Who in fact did write that letter? I honestly don't know. It could have conceivably been written by a mischievous student protestor or by a brainwashed pseudopatriot or by a muddleheaded reporternik. I don't know for sure.

"What are my observations of the whole affair? First, it is possible that some one might be angry at Trenton or me or, for that matter, angry at Haverford students in general. If this is the case, I hope that in the future this 'someone' will address himself to the persons concerned and refrain from deriding us publicly.

"Second, the reputation of Haverford was undoubtedly hurt by the content and tone of the letter. The students against the war were described as being tools of the Communist party and as being against freedom, truth, and morality. This is utterly false. These students have time and again condemned the brutality and totalitarianism which the Communists have caused. Moreover, the basis of the students' protestations lies not in the suppression of, but in the preservation and extension of freedom, truth, and morality. Also, the students in disagreement with the demonstrators appeared as being the tools of Extremist Right Wing Bigotry and Vehemence. This too is utterly false.

"Third, it is indeed unfortunate that the Main Line Chronicle was the vehicle which carried that prank letter. However, I cannot completely absolve the Chronicle, for the letter was sheer ideological and sycophantic rhetoric.

VAHAN E. BENGLIAN, JR.

Haverford College"

headed reporternik". He went on to say that the students who had protested the war were not tools of the communists, but were seeking to preserve and extend freedom, truth, and morality. He observed that it was false to believe that those who disagreed with the protestors were the tools of "extremist right wing bigotry and vehemence". Plaintiff's final comment was that the prior letter was "sheer ideological and sycophantic rhetoric". Having printed plaintiff's letter in full, the Chronicle then added, " . . . We apologize to Mr. Vahan E. Benjian [sic] Jr. for mistaking him for a loyal young American. — The Editor".

Plaintiff contends that this statement falsely charges that he is disloyal to his country, and he therefore maintains that the Chronicle has defamed him.

A libel is a malicious publication expressed in writing which tends to blacken a person's reputation and expose him to public hatred, contempt, or ridicule, or injure him in his business, trade, or profession: Clark v. Allen, 415 Pa. 484, 487 (1964). However, statements are not defamatory merely because they cause annoyance or embarrassment: McAndrew v. Scranton Republican Publishing Company, 364 Pa. 504, 510-11 (1950).

In actions charging defamation, it is the duty of the court in the first instance to examine the words in question to see if they are actionable per se. At the same time, the court must see whether the complaint alleges special or general damages. If the words are actionable per se, a plaintiff can recover general damages, that is, damages which the law presumes actually, proximately, and necessarily result from the publication of the defamatory matter. On the other hand, if the words are not actionable in themselves, plaintiff must allege and prove special damages, i.e., damages which have actually occurred as a result of the defamation: Fox v. Kahn, 421 Pa. 563, 568 (1966).

In the present suit, plaintiff alleges only general damages. It follows that a demurrer should have been sustained unless defendant's words were actionable in themselves. This was the question which we decided adversely to plaintiff.

Allegedly defamatory words are to be given their plain and natural meaning. They are to be understood in the sense in which they are used, taking into consideration the surrounding facts and circumstances, as well as all relevant parts of the communication. In short, they are to be read in context.

Paragraph 8 of the amended complaint contains that which is known as the "innuendo". It alleges that defendants charged "the plaintiff with disloyalty to his country". It is the purpose of the innuendo to define the defamatory meaning which a plaintiff attaches to the words. Its function is explanation, and the innuendo cannot be used to introduce new matter, or to enlarge the natural meaning of the words and thereby give the language a construction it will not bear: Cosgrove Studio and Camera Shop, Inc. v. Pane, 408 Pa. 314, 319-20 (1962).

In order to be actionable, words must cause a grievous fracture to a man's standing in the community of respectable society. There must be more than an abrasion of sentiment: Scott-Taylor, Inc. v. Stokes, 425 Pa. 426, 427-28 (1967). Statements which represent differences of opinion, or which hurt a man's feelings do not necessarily constitute libel: Bogash v. Elkins, 405 Pa. 437, 440-41 (1962).

The amended complaint contends that plaintiff was charged with being disloyal to his country. This, however, is not what the Chronicle said at all. At most, the editor of the Chronicle stated, "On the basis of the letter printed April 28, 1966, I would have characterized Mr. Benglian as a loyal American. He tells me that letter was a fake, and in light of what Mr.

Benglian says about his beliefs, I have changed my mind". Admittedly, the editor's comment was in a sarcastic vein, but sarcastic comments are not necessarily actionable.

It does not follow that every Haverford student who has not established his patriotism to the satisfaction of the Chronicle's editor is a traitor in the latter's opinion. It is false to assume that every man who is not a Republican must be a Democrat. It is not true that every man who is not rich must then be poor. The point is that the Chronicle has phrased its statement in the negative. It has not said what it believes plaintiff is, but only what in its opinion has not been established about plaintiff.

The distinction between saying a man is disloyal on the one hand, and acidly apologizing for having once thought he was loyal on the other, may be a fine one. Nevertheless, it exists and is no more carefully drawn than the one stated by the Supreme Court in Clark v. Allen, 415 Pa. 484 (1964). In that case, defendant wrote that he was shocked by United States Senator Joseph S. Clark's voting record "with its communist tendencies". The court held that these words were not libelous, nor would it be libelous to say a man was "pro-communist" or "soft on communism" although it had previously held it would be libelous to call any American citizen a communist.

In writing for the majority of the court, Chief Justice Bell observed, " . . . the Supreme Court [of the United States] has apparently taken the position that the free expression of thoughts and opinions, charges, accusations, criminations and recriminations regarding men in public life *and political matters* are so valuable and so essential to the preservation or improvement of our Government that they must be permitted and constitutionally protected unless they are made

with actual malice". (p. 488, italics supplied.) The Chief Justice also pointed to New York Times Co. v. Sullivan, 376 U.S. 254 (1964), which held that freedom of expression upon public questions is secured by the First Amendment to the Constitution, and that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks.

Although plaintiff is neither a public official nor a candidate for public office, he injected himself into a matter of public discussion. Anyone who submits something to the public for its approval, or who, by taking a belligerent or controversial position invites public controversy, is regarded as having sought public judgment, and is in no position to complain if that judgment, opinion, or comment is adverse: Prosser, Torts, 3rd ed. 1964, 813-14.

"A man may, by writing letters or articles for newspapers or magazines, appeal to the public either to expose what he regards as abuses on the part of governmental officials or others or to direct attention to real or supposed grievances of himself, a third person or a class. Under such circumstances, his conduct in making such an appeal is exposed to the judgment of the public, and, having started a newspaper war, he cannot complain if he gets the worst of it, so long as the expression of opinion, however disparaging, is honestly given": Restatement Torts §610, Comment (g) (1938). See also Smith v. Levitt, 227 F. 2d 855, 858 (9th Cir. 1955) ; Haas v. Evening Democrat Co., 252 Iowa 517, 107 N.W. 2d 444, 448 (1961).

When the words used by the Chronicle are read in context, they obviously refer to plaintiff's letter to the editor and the sentiments that letter expressed. Thus the two travel hand in hand, the letter having chosen the path and set the tempo. Both comment and letter

exist in the context of debate over the war in Vietnam.[3]

The commitment of the United States in Vietnam has been accompanied by the usual sound and fury which mark important decisions in a democratic society. Leaders of the community have made known their position or hidden behind their lack of position. The right and the left have advocated with fervor and viewed with dismay. Even a portion of the often-apathetic majority has reacted. Students, mindful of all they know and unaware of all they do not know, have added to the clamor. The resulting cacophony is called public debate, and from previous experience with free speech America believes there will come a clearer view of the issues and better decisions. Alas, there may also come injured feelings.

It was into this eruptive arena of acrimony that plaintiff cast his gauntlet. A man of delicate sensibilities should avoid entering the coliseum of Letters to the Editor. A salvo such as "brainwashed pseudo-patriot", "muddleheaded reporternik", "utterly false", and "sheer ideological and sycophantic rhetoric" was intended to tempt an answer. Plaintiff's real complaint is not that he was libeled, but that the shield for his feelings was softer than the brass with which his sword was tipped.

Since we concluded the Chronicle's words were not actionable per se and since plaintiff alleged only general damages, we sustained the demurrer.

---

[3] We are not saying that the Chronicle was making a fair comment on a matter of public concern since that issue could not come before us on a demurrer. See Montgomery v. Philadelphia, 392 Pa. 178, 183 (1958). We are merely saying that the comment must be understood to refer to what the letter says. Obviously, the reader is at liberty to form his own conclusions of both plaintiff and the Chronicle's editor since all the facts are available to the reader in plaintiff's letter.