Fox *v.* Kahn, Appellant.

Argued April 25, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Thurman Arnold,* of the Washington, D.C., Bar, with him *Richard L. Raymond,* and *Schroeder & Raymond,* and *Arnold & Porter,* of the Washington, D.C., Bar, for appellant.

*Garland D. Cherry,* with him *Kassab, Cherry, Curran & Archbold,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 24, 1966:

This is a slander action brought by plaintiff-appellee. A jury returned a verdict in favor of the plaintiff for $12,501. Defendant's motion for a new trial was granted on November 30, 1964, following the decision of the United States Supreme Court in *New York Times v. Sullivan,* 376 U.S. 254 (1964). At the second trial on May 4, 1965, the jury again returned a verdict for the plaintiff, this time in the amount of $12,-500. Defendant's motions for a new trial and for judgment n.o.v. were dismissed by Order of the lower Court on October 28, 1965. From the judgment entered on the verdict defendant took this appeal.

* Reporter's Note: On November 7, 1966, the Supreme Court of the United States denied a petition for a writ of certiorari.

The complaint alleged that defendant made certain defamatory statements about plaintiff at a public meeting on November 1, 1961. Defendant was at this time a candidate for justice of the peace. Plaintiff, who was then the District Attorney of Delaware County but was not seeking office, was in attendance at the meeting, along with his family and friends. Over 100 persons attended the meeting, which was held to enable candidates for office to disclose their qualifications. The jury found—as they undoubtedly could have from the testimony—that defendant during the course of his speech made the following statement: "This is as to law and justice. We had a murder down here in Trainer and the District Attorney picked up a young weak-minded fellow and got a confession out of him; it was a simple way he got it, he put him in a room by himself *and beat it out of him with a telephone book.*"*

At the trial, defendant denied that he uttered these words but admitted that *he knew, at the time the words were allegedly spoken, that plaintiff did not administer the alleged beating nor order it to be done.* Defendant further admitted that he knew that the place where the alleged beating took place was not in the District Attorney's office, and that he had no basis for believing at the time of the public meeting that the plaintiff even knew of the alleged beating.

The testimony regarding the alleged beating was that a murder suspect, during the course of a habeas corpus hearing, had accused a state police officer of "slapping" him and injuring an eardrum during his interrogation. Defendant admitted that he had read this testimony and had conferred with the attorney for the murder suspect, prior to the public meeting. He further admitted that he knew prior to said meeting

---

* Italics throughout, ours.

that the only force that had been used was used by a state policeman.

Immediately following the public meeting, defendant wrote a letter to the local newspaper, which stated, inter alia: "Mr. Fox's handling of the Nicklaus case was, and still is, a perversion of law enforcement and an offense to justice. From his chosen clay pigeon, Alfie Kessleski, *he had a confession extorted by physical beating.*"

Defendant contends on appeal (1) that there was no evidence of malice as defined by the United States Supreme Court in cases involving public criticism of official conduct—See *New York Times v. Sullivan,* 376 U.S. supra; *Garrison v. Louisiana,* 379 U.S. 64; (2) that even if malice were present, the Court's charge was in violation of the rule announced in *New York Times v. Sullivan,* supra; and (3) that special or compensable injury must be shown by plaintiff in order to recover damages, and none was shown.

In the *New York Times v. Sullivan* case, the Court said (pages 279-280): "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, *with knowledge that it was false* or with reckless disregard of whether it was false or not."

Defendant's first contention is obviously completely devoid of merit. The jury found that defendant made the statement at the public meeting, and at that time he knew the statement was false. While defendant denied making the statement, he admitted that he knew prior to the public meeting that any such statement was false.

Defendant relies heavily on *Garrison v. Louisiana,* 379 U.S., supra. That case is clearly inapposite because it dealt with the tests for recklessness. Where,

as here, knowledge of falsity is not only proved, but admitted, actual malice is proved, and it is unnecessary to prove that the defendant uttered the words with reckless disregard of whether the statement was or was not false.

Defendant's second contention is that the charge of the Court on malice did not conform to the rule set out in the *Sullivan* case. The relevant portion of the charge is as follows:

"Let me pause right there and point out to you that you will notice from the definition which I have given you that the law makes a distinction between honest criticism of a public official in the manner in which he handles or conducts matters of his office, and defamation of character, which in the case of a public officer becomes defamation rather than criticism, to charge a public officer with misconduct of a criminal nature where the misconduct alleged is actually in derogation of the oath of office taken by the public officer.

"Now in this case all parties agree that the plaintiff Mr. Fox, Jacques Fox, is a public officer and was at the time of the alleged speech made by this defendant in Upper Providence Township. Therefore the plaintiff in addition to proving the utterance of the defamatory statement must prove that the statement or remark was uttered by the defendant with malice. I instruct you therefore that you the jury have a two-fold duty before you can award any damages to the plaintiff. First you must find that this defendant did make a defamatory utterance about the plaintiff Mr. Fox. And secondly you must be satisfied of the existence of malice on the part of the defendant.

"Now if a false statement is uttered not with the honest desire of informing the public, but for another and sinister motive and without an honest desire to impart information, you may find malice. In other words, *you may find malice* if you find that a defama-

tory statement was uttered with reckless disregard of whether it was false or not *or was uttered with actual knowledge of its falsity."*

Defendant's attorney took no specific exception to this charge. The Court, without any request by the attorney, gave to each party a general exception to the charge. Appellant now alleges that the Court's charge on malice was incorrect. Not only did the charge present the generally accepted definition of malice, but the language of *New York Times v. Sullivan* was accurately paraphrased. Especially if the charge be considered as a whole, it clearly and accurately reflects, we repeat, the law of slander of a public official as set forth in *New York Times v. Sullivan* and the cases hereinabove cited.

Defendant's third contention is based on the recent case of *Linn v. United Plant Guard Workers,* 383 U.S. 53 (1966). This case held that where an official of an employer sues an employee and his union and its officers for allegedly libelous statements in leaflets which were circulated in connection with a campaign to organize the employees, (1) the state law was not preempted by the National Labor Relations Act* and (2) the State Court had jurisdiction to apply state remedies if the complainant pleads and proves that the statements were made with actual malice and injured him. Such injury must be shown even though the language is actionable *per se,* and even though damages are presumed in this field of the state law.

The question of whether the language was actionable *per se* is in the first instance a matter of law for the Court. *Clark v. Allen,* 415 Pa. 484, 204 A. 2d 42. The Court in the instant case determined that defendant's utterances, if made by him, constituted slan-

---

* *Meyer v. Joint Council 53, International Brotherhood of Teamsters,* 416 Pa. 401, 206 A. 2d 382, 78 Harv. L. Rev. 1670.

der *per se* and so charged the jury. This determination is not here challenged and could not successfully be challenged. Accordingly, it was not necessary for plaintiff to present evidence of special damages. We think that the *Linn* case is clearly inapplicable here to require proof of special damages. The reasoning upon which *Linn* stands is that state libel remedies may be curtailed *only if and to the extent that they impinge upon and impair the actual needs of national labor policy.* No such overriding federal policy here exists.

To summarize, we find no merit in any of defendant's contentions.

Judgment affirmed.

Mr. Justice EAGEN dissents.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority errs in failing to reverse the judgment and remand the case for a new trial.

The trial judge's charge on the issue of malice was: "Now if a false statement is uttered not with the honest desire of informing the public, but for another and sinister motive and without an honest desire to impart information, you may find malice. In other words, you may find malice if you find that a defamatory statement was uttered with reckless disregard of whether it was false or not or was uttered with actual knowledge of its falsity."

As the majority quotes *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) the Court said at pages 279-280: ". . . 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

The lower court's charge only half stated the standard. The language would enable a jury to find malice if it believed defendant was negligent with regard to truth or falsity, but had a "sinister motive." The words "[i]n other words" create an equivalence be-

tween the language preceding and following the equation sign. It is just as likely that the jury followed the definition in the first half of the equation as it is that they followed the language in the second half.

Where the issue is one of whether the action sued upon was protected as within permissible constitutional limits the greatest care ought to be taken so that the jury is accurately charged. Otherwise, a defendant may be deprived of his constitutionally protected freedom. Such a denial may have resulted here. The potentiality of its having happened is, I think, sufficiently great that the error should be treated as fundamental error.

The majority also errs in finding *Linn v. United Plant Guard Workers,* 383 U.S. 53 (1966), inapplicable. There, the Supreme Court found that the National Labor Relations Act was not concerned with vindication of the reputation of one defamed and that the Board could not compensate him. While the Court held that the Act did not pre-empt a suit under state law for defamatory remarks made in the context of a labor dispute, it imposed the restriction on state remedies that "effective administration of national labor policy" emanating from the NLRA required the limitation of recovery to those cases where malice and damage were shown. The Court then said that it was adopting the *New York Times* standards.

By finding *Linn* inapplicable in the present context, the majority is saying that more redress for defamation must be allowed in the area of a political campaign than in the context of a labor dispute. Yet, in *Linn,* the Court quoted *New York Times* as to the policy involved: "[C]ases involving speech are to be considered 'against the background of a profound . . . commitment to the principle that debate . . . should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasant-

ly sharp attacks.' " 383 U.S. at 62. Thus, the Court recognized that the policy of encouraging free speech is as great in politics as in labor. I personally feel that a much larger area of unrestrained comment is permissible in a political campaign.

I dissent.