**C. R. GROVE, Trustee, et al. and Altoona Clay Products, Inc., a corporation, Plaintiffs,**

**v.**

**DUN & BRADSTREET, INC., a corporation, Defendant.**

**Civ. A. No. 63–724.**

United States District Court,
W. D. Pennsylvania.

Feb. 4, 1970.

Evans, Ivory & Evans, Joseph A. Williams, Pittsburgh, Pa., Goodman & Notopoulos, Altoona, Pa., for plaintiffs.

Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

Prior to the retrial of the above-captioned action the Court reviewed the action in the light of the subsequent development of the doctrine of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 [1964] in the cases of Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 [1967]; Curtis Publishing Co. v. Butts, and Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 [1967]; Pickering v. Board of Education, 391 U. S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 [1968]; St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 [1968]; and other cases expanding that doctrine.

The recent decision of the Court of Appeals for the Third Circuit in Rosenbloom v. Metromedia, Inc. [September 15, 1969] 415 F.2d 892, further focused our attention to the treatment of the problem of defamation in this Circuit as well as in other courts of appeal.

Rosenbloom v. Metromedia, Inc., was a diversity case tried by the district court under the prevailing controlling Pennsylvania law, submitted to the jury resulting in a verdict for the plaintiff.

In its review the Court of Appeals considered the application of state law to the case:

"Although defendant contends to the contrary, we shall accept the district court's conclusion that certain of the statements in the two series were defamatory as a matter of Pennsylvania law and, in the circumstances, created a jury issue under such law." 415 F. 2d p. 894.

Similarly, in the instant case, the matter was submitted to the jury under controlling Pennsylvania law, but the court refused to find or to charge the jury that the case was controlled by the federal constitutional standard of "actual malice" as defined in Times v. Sullivan.

The Court finds and the plaintiff admits in its brief and argument on this point that there is no evidence of "actual malice" in this case sufficient to constitute a jury issue.

■ On argument called for by the court on this point the plaintiff contends that the application of the "actual malice" standard raises the question of whether this court is properly considering whether Pennsylvania's statutory standard for the action of libel is constitutional.

A similar point was considered in Cepeda v. Cowles Magazines and Broadcasting, Inc., 392 F.2d 417 [9th Cir., 1968], where the court of appeals had previously determined that a complaint stated an enforceable claim for libel under state law in 1964 and had remanded the case for trial [328 F.2d 869] and later sustained the subsequent dismissal of the case by the district court under the New York Times v. Sullivan doctrine:

"When the case was sent down from this court for trial in the district court, the normal situation would have been that the 'law of the case' announced by this court would have been, whether right or wrong, the law applicable to the trial in the district court. The district court wisely recognized that a higher law, that of the Supreme Court of the United States, had intervened after our decision and that the trial, if it was not to be a futility, must necessarily be had upon the basis of that higher law." 392 F.2d, p. 420.

The *Cepeda* case stated that "New York Times Co. v. Sullivan * * *, had, in 1964, preempted the law of libel as it related to public officials, making the outcome of such a suit dependent not upon state constitutions, statutes, and decisions, but upon the First Amendment to the Constitution of the United States and its interpretation by the Supreme Court."

Similarly, in this Circuit, the Court of Appeals has found the matter to be an

accommodation between state law and constitutional standards:

"It is our view that at least in the present factual context the proper accommodation between the First Amendment protections and the state law of defamation is found by requiring a plaintiff to meet the standard of proof formulated in *New York Times Co. v. Sullivan,* supra, i.e., that in order to recover damages here, plaintiff must prove that the statement was made with 'actual malice' * * *. In adopting the accommodation reflected in the actual malice standard we are not precluding plaintiff and others in similar situations from recovering in actions for defamation of character. We are merely establishing the quantum and type of proof required to permit recovery." Rosenbloom v. Metromedia, Inc., supra 415 F.2d at p. 896.

■ We turn to the question of whether the publication involved is entitled to the constitutional protection. The media here involved was a commercial credit report circulated to a limited number of subscribers who had particularly requested it. The constitutional protection is not limited to a particular form of media, whether printed matter, or radio, or television. Rosenbloom v. Metromedia, Inc. supra. The constitutional protection even extends to the writer of a letter on a matter of public interest, where the writing of the letter by a school board employee was made the grounds of dismissal from employment. Absent "actual malice" statements are under the First Amendment protection even though they otherwise support a state cause of action for libel, New York Times v. Sullivan, supra; criminal libel, Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 [1964]; invasion of privacy, Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534 [1967]; or discharge from public employment, Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731 [1968].

■ What is the scope of the constitutional protection? It seems clear that the cases which have developed in the period since New York Times v. Sullivan, supra, all involve matters of real public interest. As stated in Rosenbloom v. Metromedia, "Again, it is clear to us that the subject matter was of real public interest. Indeed, the Supreme Court has construed broadly the concept of a matter or an issue of public interest:

" 'The guarantees for speech and press are not the preserve of political expression or comment upon public affairs, essential as those are to healthy government. One need only pick up any newspaper or magazine to comprehend the vast range of published matter which exposes persons to public view, both private citizens and public officials. Exposure of the self to others in varying degrees is a concomitant of life in a civilized community. The risk of this exposure is an essential incident of life in a society which places a primary value on freedom of speech and of press.

"Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period." Thornhill v. Alabama, 310 U.S. 88, 102, 60 S.Ct. 736, 744, 84 L. Ed. 1093.' Time, Inc. v. Hill, 385 U. S. 374, 388, 87 S.Ct. 534, 542, 17 L. Ed.2d 456 [1967]." 415 F.2d at p. 895.

The application of this principle has been evidenced by the widespread appearance of cases from both the state courts and the federal courts all over the country. See Fox v. Kahn, 421 Pa. 563, 221 A.2d 181 [1966] (oral statements on conduct of a district attorney); Sellers v. Time, Inc., 299 F.Supp. 582, [E.D. Pa., 1969] (sport's magazine comments on a negligence suit against an amateur golfer); United Medical Laboratories v. C.B.S., 404 F.2d 706 [9th Cir., 1968] (T. V. comments on practices of medical testing laboratories); Bon Air Hotel,

Inc. v. Time, Inc., 295 F.Supp. 704 [S.D. Ga. 1969] (magazine comments on resort hotel accommodations); All Diet Foods Distributors, Inc. v. Time, Inc., 56 Misc.2d 821, 290 N.Y.S.2d 445 [N.Y.1967] (comments on health food sales in a book on nutrition); Farnsworth v. Tribune Co. [Sup.Ct.Ill., 1969] 253 N.E.2d 408, (newspaper publication on practices of an osteopathic physician). See also cases cited in Annot. Libel and Slander: Who is a Public Official or Otherwise within the Federal Constitutional Rule Requiring Public Officials to Show Actual Malice, 19 A.L.R.3d 1361 and 1969 Supp.

█ Is the nature of the publication of mercantile credit reports within the scope of the constitutional protection? We think that the law has long recognized the utility of these publications. In the case at bar the privilege of the communication at issue was established as the law of the case by the court of appeals in its opinion, 3 cir., 367 F.2d 629. This privileged character of mercantile credit reports has a long history. " * * * there is a strong public policy giving rise to the privilege in the interest of society as a whole in availability of credit information." Serino v. Dun & Bradstreet, Inc., 267 F.Supp. 396 [D.S. C.1967].

Many of the previously cited cases have applied the federal constitutional standard to publications of wide circulation and dissemination, such as large metropolitan newspapers, national magazines, and radio and T. V. broadcasts, even where the party alleging defamation was known only to a limited public, because of the public interest in the subject matter. In the instant case we have the situation where the distribution of the publication, admittedly a matter of public interest, was distributed only to those having a special interest in the information and who had specifically requested such information. Long ago it was recognized that such a publication had a public interest.

"Public interests will be adequately conserved by extending the immunity of privileged communications only so far as to embrace communications to subscribers who have special interest in the information." King v. Patterson, 49 N.J.L. 417, 9 A. 705, 712 [1887].

The court has raised this issue before trial on its own motion. The defendant pleaded this issue in an Amendment to its Complaint, before trial, and it was made a ground of its motion for judgment N.O.V. which we previously denied. As was stated in Bon Air Hotel, Inc. v. Time, Inc. 295 F.Supp. 704, 708 [S.D. Ga.1969], in vacating a prior order denying summary judgment, "It is entirely possible that Judge Scarlett was correct in 1967 and wrong in 1969. This field of constitutional law is fast changing, rapidly developing and his order overruling the Motion may have become erroneous in the light of developments which make the actual malice test applicable here."

It appears proper to us that the serious constitutional question involved here should be resolved before we embark upon a trial of the issues which may be a useless procedure under our view of the controlling constitutional standard. Our prior order in this case denied the defendant's motion for judgment n.o.v. but granted the motion for new trial. A court at anytime before final decree may modify or rescind a prior interlocutory order. Simmons Co. v. Greir Bros. Co., 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475 [1922]. To secure an appealable final order we will vacate our prior order of July 16, 1968 denying defendant's motion for judgment n.o.v. and enter an order granting judgment to defendant in accordance with its motion for directed verdict and dismissing plaintiffs' action.

### ORDER

And now this 4th day of February, 1970 it is ordered:

(1) That the Order of Court of July 16, 1968 denying Defendant's Motion for Judgment in Accordance with Defend-

ant's Motion for a Directed Verdict is vacated;

(2) That Judgment be entered herein for Defendant in accordance with Defendant's Motion for Directed Verdict;

(3) That Plaintiffs' action is dismissed; and

(4) That the Order of Court of July 16, 1968 granting Defendant's Motion for a New Trial shall take effect only in the event that the ruling of the court on Defendant's Motion for Judgment is reversed on appeal.