634 A.2d 237

Ida M. WALKER, Appellee

v.

GRAND CENTRAL SANITATION, INC., and Nolan Perin,
Both Individually and as President of Grand Central
Sanitation Inc., Appellants.

Superior Court of Pennsylvania.

Submitted Aug. 31, 1993.

Filed Nov. 29, 1993.

238

Leonard N. Zito, Bangor, for appellants.

William P. Exaros, Bethlehem, for appellee.

Before OLSZEWSKI, JOHNSON and HUDOCK, JJ.

OLSZEWSKI, Judge:

This is an appeal from a jury verdict entered in favor of appellee, Ida Walker ["Walker"]. After a three-day trial, a jury found appellant Nolan Perin and his corporation, Grand Central Sanitation ["Grand Central"] liable for breaching an employment contract and for defaming Walker by making allegedly false statements to a potential employer. The trial court, viewing the same evidence as the jury, found for Grand Central on Walker's discrimination claim under the Pennsylvania Human Relations Act.[1] We reverse in part and affirm in part.

In the early 1980's, Walker was employed by the Container Corporation of America as a buyer in charge of the company's "bin truck division." In this position, among other responsibilities, Walker oversaw an operation which involved the mass collection of old newspapers from different locations in the Philadelphia area. Through a fellow salesperson, Walker met Perin and his business associates (Perin's brother and sister), who were interested in expanding Grand Central to include recycling among its established trash-hauling services. Walker met with the Perins to explain her understanding of the field, developed through her experiences with Container, and eventually the Perins asked her if she would be interested in working for Grand Central. After several oral discussions regarding salary and benefits, Walker accepted the Perins' offer and began working for Grand Central in late 1984.

---

1. 43 Pa.S.A. § 951 *et seq.* The trial court correctly held that Walker had no right to a jury trial under the Act, *Murphy v. Cartex*, 377 Pa.Super. 181, 546 A.2d 1217 (1988), and thus disallowed the jury to consider this claim.

Walker was assigned to work in Grand Central's subsidiary corporation, Pocono Independent Paper ["Pocono"]. Pocono handled the Perins' new recycling venture, and it was Walker's job to establish and maintain accounts for the new enterprise. Walker testified that she opened recycling accounts with various area businesses, most of which were not previous customers of Grand Central. Despite her successes, however, Walker's efforts did not proceed without setbacks. She testified that on two occasions, the Perins became upset with her job performance: on one occasion, the Perins discovered a deficiency in an accounting system designed by her to set prices for Pocono's recycling services which required the company to revamp the system. On another, Nolan Perin discovered a $50,000 mathematical error in a bid which Walker prepared for submission to a potential corporate client. Approximately three weeks after this incident, Walker's employment was terminated, despite her protestations that the Perins had never criticized her performance in any formal way and her claim that she was personally responsible for doubling Pocono's sales while she was in Grand Central's employ. Perin, conversely, testified at length regarding his dissatisfaction regarding Walker's handling of client accounts, such as those described above, and that his frustration with Walker led to her termination.

Walker, now unemployed, feverishly sought new employment, sending out "hundreds" of resumes. During her search, Walker contacted Rudolph Tolbert, an acquaintance who she met through the Pennsylvania Resources Council. Tolbert informed Walker that he was in the midst of developing an enterprise which would bid on certain recycling contracts in the Philadelphia area. Tolbert expressed interest in hiring Walker as part of his marketing team, and told her that he was in the process of assembling resumes for his development package. As part of this process, he contacted Perin for a reference regarding Walker's performance at Pocono. Perin did not respond favorably, and Tolbert included Perin's words in a letter to Walker:

Dear Ida,

I called Pocono Paper Stock several times, first speaking to Kris who could do nothing but verify that you had worked at PPS, but could not attest as to your job description or work quality.

On September 23, 1986, Mr. Nolan Perin returned my call. I advised Mr. Perin that I was trying to put together a team in preparation for bidding on City of Philadelphia contracts for the marketing of recyclables and that I was considering you to supervise a marketing team of four persons, one of whom would be a bookkeeping/clerical type.

Mr. Perin said that he "didn't know if she can do it." "[Pocono] didn't have a lot of success with her. Maybe she could do it for someone else. Perhaps the Pocono position was beyond her capabilities."

I asked Mr. Perin what your problem was as he saw it. He told me that you "had a problem meeting goals," that you were "too liberal with personnel," and that you "wouldn't come into work Monday after working a hard week. I [Perin] just couldn't make money operating like that ... maybe you can, but I can't. I just got tired of it and let her go."

With this kind of reference, I believe that it would be difficult to successfully respond to a Request for Qualifications from the City if you were a key member of the applicants' group.

If you would like to discuss this further, you may call me at the above telephone number or at the Community Development Coalition [ ...].

> Very Truly Yours,
>
> Rudolph V. Tolbert

Although Tolbert never considered Walker for employment, his business venture never transpired. Tolbert also testified that he thought nothing less of Walker or her capabilities as a result of the recommendation. Furthermore, Walker adduced no testimony that any other person heard the publication or

was affected by it.[2] Based on the statements attributed to Perin in Tolbert's letter, Walker brought this action claiming that he defamed her. The jury awarded her $23,500 on the defamation claim.[3] Perin appeals this verdict claiming that the trial court should have granted, for various reasons, his motion for a judgment notwithstanding the verdict. He also raises several other arguments, which we address in turn.

## I. DEFAMATION

Perin argues that the trial court should have directed a verdict or alternatively granted his motion for a judgment notwithstanding the verdict on the defamation claim because Perin's statements are not capable of defamatory meaning and because Walker suffered no damage by their utterance. Our standards of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We may reverse only if we find an abuse of discretion or an error of law which controlled the outcome of the case. *Timbrook v. Foremost Ins. Co.*, 324 Pa.Super. 384, 471 A.2d 891 (1984). We must also consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to Walker, the verdict winner. *Moure v. Raeuchle,* 529 Pa. 394, 604 A.2d 1003 (1992). We have summarized the

---

2. In fact, Walker's counsel admitted that he was uncertain whether any other potential employer received any recommendation from Perin whatsoever:

> Counsel: Your Honor, the count defamation we have to show that she made various applications through various people, including she then received a letter, and I can't go any further than the letter. I have to bring Mr. Tolbert as to the defamation. In addition I think it is also relevant that she made hundreds of applications, of which we have lumped them all together, and it is our argument to the jury that in addition to Mr. Tolbert that there were other employers who received the same sort of response, and she was turned down for hundreds of jobs.
> The Court: Are you able to prove that?
> Counsel: No Your Honor, I can't. As to Mr. Tolbert, then, I can do that because I have him.

> N.T. 11/18/91, at p. 203.

3. The jury also awarded Walker $5,500 on her breach of contract claim. This verdict is also challenged on this appeal and treated separately at p. 245, *infra.*

evidence in this manner above and now proceed to Perin's claims.

Perin claims first that his statements are incapable of defamatory meaning. Any defamation action begins with the court's legal determination of whether the spoken words are capable of impugning the reputation of the person who alleges the defamation. *Sobel v. Wingard*, 366 Pa.Super. 482, 531 A.2d 520 (1987). A publication is defamatory if it is intended to harass the reputation of another so as to lower him or her in the estimation of the community or if it tends to deter third persons from associating or dealing with him or her. *Id.* at 485, 531 A.2d at 522; *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 273 A.2d 899 (1971). When considering defamatory meaning, the court must determine what effect the statement is fairly calculated to produce and the impression it would naturally engender in the minds of average persons among whom it is intended to circulate. *Corabi*, 441 Pa. at 447, 273 A.2d at 907; *Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583 (1980). A statement which ascribes to another conduct, character, or a condition which would adversely affect her fitness for the proper conduct of her lawful business, trade or profession is defamatory. *Geyer v. Steinbronn*, 351 Pa.Super. 536, 506 A.2d 901 (1986). It is well established, however, that a statement which is a mere expression of opinion is not. *Baker v. Lafayette College*, 350 Pa.Super. 68, 504 A.2d 247 (1986).

Viewing Perin's statements in the context in which they were made, it is clear that many of his statements were opinions. Perin's assertion that he "did not have a lot of success" with Walker was nothing more than an assessment of her performance in light of his expectations. Likewise, his feeling that "I don't know if she can do it," the statement that Walker was "too liberal with personnel" and his conclusion that "I just can't make money like that" cannot be interpreted as reflecting on Walker's reputation within the business community because they express Perin's subjective viewpoint. Whether Perin is "picky" or "unfair," as Walker testified, is

not subject to scrutiny. Perin is entitled to value Walker's addition to his business in any way he wishes, so long as these are his personal judgments. We find that these particular statements are not actionable as slander.

We cannot say the same for the remaining statements, however, for even if they could be viewed as part of Perin's overall assessment of his business judgment regarding Walker's performance, they "imply the existence of undisclosed defamatory facts justifying the opinion," *Baker v. Lafayette College, supra,* 350 Pa.Super. at 79, 504 A.2d at 252, and thus are capable of defamatory meaning. For example, Perin's statement that Walker's position at Pocono might have been "beyond her capabilities" implies that Walker's background or ability is somehow deficient for a position in the recycling/marketing field. This implication could tend to undermine the community's confidence in her ability for potentially fallacious reasons. Moreover, Perin's accusation that Walker did not show up for work on Mondays after working a hard week is not an opinion at all—it is a statement of fact which, if proven to be untrue, could have a devastating effect on Walker's reputation. Since we must view the evidence in a light most favorable to Walker, we conclude that these comments, even though laden with opinions, were capable of defamatory meaning.

Perin claims next that judgment notwithstanding the verdict should have been granted because Walker suffered no damage; Tolbert's venture never transpired and he was unaffected by the utterance of the words. Contrarily, Walker argues that since Perin's statements impugned her business reputation, she was a victim of slander *per se.* She therefore contends that damages are presumed and any further inquiry into damages flowing from the statements is unnecessary. We cannot agree with Walker's contention.

It is beyond any reasonable cavil that a publication in which the speaker imputes to another conduct, characteristics, or a condition that would adversely affect her in her lawful business or trade is termed a "slander *per se.*" *Thomas*

*Merton Center v. Rockwell Internat'l Corp.*, 497 Pa. 460, 442 A.2d 213, *cert. denied,* 457 U.S. 1134, 102 S:Ct. 2961, 73 L.Ed.2d 1351 (1982); Restatement (Second) of Torts, § 573. The exact effect, however, of characterizing a slander as *"per se"* under Pennsylvania law is open for interpretation. At common law, slander *per se* entitled a jury to award any amount of damages without reference to whether the plaintiff proved the existence of any actual harm.

> When one's reputation is impaired, this affects one's relations with others, including business, social, religious, and family. The impairment does interfere in a variety of unpredictable and unknowable ways with the enjoyment of life. Under the English and American common law, as heretofore explained, harm to reputation was presumed from the publication of a libel or a slander *per se.* Therefore, actual damages were normally assessable by the jury without proof by the plaintiff that there had been any impairment of reputation. Thus, general damages at common law were an estimate, however rough, of the probable extent of actual loss a person had suffered and would suffer in the future, even though the loss could not be identified in terms of advantageous relationships lost, either from a monetary or enjoyment of life standpoint.

Prosser, Torts, § 166(a) (notes omitted).

The Second Restatement of Torts, however, exhibits a concern for the relative inability of courts to control the amount of damages awarded by juries under the common law. It therefore requires a victim of slander *per se* to make some showing of general damage, although she need not prove "special damage," *i.e.,* monetary or out-of-pocket loss borne by the defamation. *See* Restatement (Second) of Torts, § 573.

> One who is liable for a defamatory communication is liable for the proved, actual harm caused to the reputation of the person defamed.

*Id.,* § 621. A comment to this section indicates that proof of actual damage is a requirement for all slander actions; the only difference between actions which are *per se* and those which are actionable only upon proof of an "innuendo" is that

in *per se* cases a plaintiff need not establish pecuniary or economic loss. *Id.* Under the Second Restatement, a plaintiff in a slander *per se* case must show "general damages": proof that one's reputation was actually affected by the slander, or that she suffered personal humiliation, or both.

In Pennsylvania, our legislature seemingly abrogated the common law rule of truly "presumed damage" when it codified the prerequisites for recovering in a defamation action. 42 Pa.C.S.A. § 8343 provides:

Burden of Proof

(a) Burden of Plaintiff.—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its communication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) *Special harm resulting to the plaintiff from its publication.*

(7) Abuse of a conditionally privileged occasion.

*Id.* (emphasis added). Section 8343, however, only requires the plaintiff to prove special damage in cases where "the issue is properly raised." Is the issue of special damage properly raised in a case of slander *per se?*

▮▮▮ Although the statute does not expressly provide the answer, it presumably does not overrule the long line of cases in our Supreme Court which hold that a slander *per se* is actionable without proof of special damage. *Halliday v. Cienkowski*, 333 Pa. 123, 3 A.2d 372 (1939) (name-calling such as "Scotch-bitch," "bastard," and "bum" not actionable without proof of special damage); *Solosko v. Paxton*, 383 Pa. 419, 119 A.2d 230 (1956) (Referring to a person as a "communist" in the community imputes criminal behavior and is actionable with-

out proof of special damage); *Fox v. Kahn*, 421 Pa. 563, 221 A.2d 181 (1966); *Baird v. Dun & Bradstreet*, 446 Pa. 266, 285 A.2d 166 (1971). Thus, we can state firmly that a plaintiff who pleads and proves slander *per se* need not prove special damages in order to recover. But does she need to prove general damage?

The answer to such a fundamental question has proved to be quite elusive under Pennsylvania law. Notably, the United States Supreme Court has held that in defamation cases brought by private plaintiffs against media defendants, the First Amendment prohibits the states from awarding presumed or punitive damages, absent a showing of "actual malice." *Gertz v. Welch*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The *Gertz* court balanced the states' interest in compensating a victim of defamation with the public interest in allowing the press constitutional "breathing room" to disseminate information to the public without fear of exacting state scrutiny.

The common law of defamation is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss. Under the traditional rules pertaining to actions for libel, the existence of injury is presumed from the fact of publication. Juries may award substantial sums as compensation for supposed damage to reputation without any proof that such harm actually occurred. The largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms. Additionally, the doctrine of presumed damages invites juries to punish unpopular opinions rather than to compensate individuals for injury sustained by the publication of false fact. More to the point, the States have no substantial interest in securing for plaintiffs such as this petitioner gratuitous awards of money damages far in excess of any actual injury.

*Gertz*, 418 U.S. at 349, 94 S.Ct. at 3011–3012. In *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 105 S.Ct.

2939, 86 L.Ed.2d 593 (1985), a plurality of the Court held that the First Amendment limitation on presumed and punitive damage awards applies only when the defamatory publication involves a matter of public concern. Thus, under *Gertz* and *Dun & Bradstreet*, it is conceivable that the state could follow the common law rule in cases of libel and slander where a matter of "purely private concern" is at issue. *Dun & Bradstreet*, 472 U.S. at 761–762, 105 S.Ct. at 2946. On the other hand, there is nothing in these cases that would indicate that a state is ever required to award presumed damages. Therefore, the Supreme Court's pronouncement on the subject does not resolve the question of whether damages can be presumed against Perin, a private person. The answer to the question is purely a matter of state law unaffected by the First Amendment.

This Court, however, has acknowledged the soundness of *Gertz*'s rationale. In *Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456 (1984), we held that all libels whether libelous "on their face" or libelous only upon proof of an innuendo (libel *per quod*), are actionable without proof of special damage. Citing *Gertz*, we noted that "[g]iven these newly-articulated constitutional requirements of actual harm to the plaintiff and actual fault on the part of the defendant, there is no sense and no reason in jurisprudence to impose a further artificial restriction, in the form of the need to prove 'special damages,' on the defamed plaintiff who seeks recovery for a 'libel per quod.'" *Id.*, 334 Pa.Super. at 327, 483 A.2d at 473. We therefore eviscerated the distinction between libel *per se* and libel *per quod* and held that "[c]ourts in libel cases should be guided by the same general rules that govern other types of tort recovery." *Id.* at 329, 483 A.2d at 474. Unfortunately, *Agriss* was decided before *Dun & Bradstreet, supra.* Therefore, the basis upon which that case requires all libel plaintiffs to prove actual damage—*Gertz*'s constitutional limitation on awarding presumed damages—is not a valid basis on which to do so, at least in the case of a defamation involving a purely private matter. Thus, the question of whether certain classes of defamation plaintiffs are entitled to recover without

proving general damages is conspicuously left unanswered. *Agriss'* reference to *Gertz, however,* does indicate that this Court entertains a policy against allowing damages without any proof of actual harm. But is it the law?

Reference to cases on the subject offer little express guidance. In *Solosko v. Paxton, supra,* for example, our Supreme Court decided an interesting case in which the plaintiff, a prominent doctor, sued a man for accusing him, at community events, of being a communist. A jury returned a verdict in favor of the plaintiff for $10,000 and the defendant appealed, claiming that the plaintiff failed to prove special damage. The court wrote:

> Generally speaking, damages for defamatory words when spoken are not recoverable in the absence of proof of special damages. Among the well established exceptions to this general rule are words, falsely spoken, imputing the commission of a crime involving moral turpitude, for which the party might be indicted and punished. Such words are held to be slanderous *per se* and proof of special damages in those instances is not required to support a recovery: Restatement, Law of Torts, 571, and cases cited in Pennsylvania Annotations thereto.

*Id.,* 383 Pa. at 419, 119 A.2d at 232. The court therefore concluded that since being a member of the Communist Party at that time could arguably subject the plaintiff to criminal liability, he was not required to prove special damages at trial. The court, however, held that the jury verdict "under all the circumstances presented in [the] record," was excessive. It therefore ordered a remittitur of $6,500. *Id.,* 383 Pa. at 419, 119 A.2d at 233.

*Paxton* is enlightening, however, not for what it says, but for what it does. Although the Supreme Court does not indicate whether the plaintiff's damages were presumed by the mere utterance of the slanderous words, it does review the record for some objective basis upon which the jury award was based. If damages were truly "presumed," the court would have no means by which to evaluate the jury award, because as Prosser notes, *supra,* no evidence of damages would ever have been presented to the jury. The Supreme

Court's very act of reviewing the record for ground upon which the jury may award damages implies what has never been said—the burden is on the plaintiff to establish at least general damages. *See Wilson v. Benjamin*, 332 Pa.Super. 211, 481 A.2d 328 (1984) (allegation that libel *per se* plaintiff failed to show damage fails where record supports finding plaintiff was injured by defamatory statements). Moreover, if a plaintiff in a slander *per se* case were not required to prove any damages whatsoever, why does a rule of Pennsylvania law provide that she need not prove "special" damages? Why not hold that an alleged victim of a slander *per se* has no duty to plead "damage" and leave it at that?

We are convinced, and therefore hold, that Section 621 of the Restatement (Second) of Torts accurately states the law of Pennsylvania with regard to damages in cases of slander *per se*. Namely, a defendant who publishes a statement which can be considered slander *per se* is liable for the proven, actual harm the publication causes.[4] This is consistent with our Supreme Court's tendency to adopt the Second Restatement of Torts in defamation matters. *See Agriss, supra*, 334 Pa.Super. at 326, 483 A.2d at 473 (acknowledging same).

Moreover, our holding is consistent with our state's policy of compensating, in full, a plaintiff who has proven her right to redress, while ensuring that we do so in a manner that is not unfair to the liable party:

[D]amages are to be compensatory to the full extent of the injury sustained, but the award should be limited to com-

---

4. Until now, we have avoided a discussion of whether Perin could avail himself of a conditional privilege to defame Walker. Normally, a former employer has a conditional privilege to communicate defamatory information when asked by a prospective employer to evaluate the employee's performance. *Daywalt v. Montgomery*, 393 Pa.Super. 118, 573 A.2d 1116 (1990); *Geyer v. Steinbronn, supra*, 351 Pa.Super. 536, 506 A.2d 901. Although our review of the record fails to reveal any factual basis for the jury's finding that the privilege was abused—the statement was made to one person who requested it and was not affected by it—we acknowledge that this is not our province. Any further discussion of privilege is unnecessary, however, since we have

pensation and compensation alone. Expressed more concisely by Chief Justice Gibbon, speaking for the Court [. . .]:

"The rule is to give actual compensation, by graduating the amount of damages exactly to the extent of the loss." Moreover, except in those cases where public policy allows punitive damages, the loss sustained should be compensated with the least burden to the wrongdoer consistent with the idea of fair compensation to the injured.

*Incollingo v. Ewing*, 444 Pa. 299, 307, 282 A.2d 206, 228–229 (1971) (internal citations omitted). Requiring the plaintiff to prove general damages in cases of slander *per se* accommodates the plaintiff's interest in recovering for damage to reputation without specifically identifying a pecuniary loss as well as the court's interest in maintaining some type of control over the amount a jury should be entitled to compensate an injured person. On one hand, a slander *per se* plaintiff is relieved of the burden to actually prove pecuniary loss as the result of the defamation; yet on the other hand, a jury will have some basis upon which to compensate her. Allowing the plaintiff to submit a claim for redress upon the presumption that she was damaged, especially in a case such as this, where the record is patently clear that no harm was suffered, requires the court to blindly follow a rule of law without regard to the reality of the situation presented. We cannot sanction, nor can we find that our Supreme Court has ever intended to sanction, such a rule.

 Here, it becomes clear upon reviewing the record that the jury was not presented with evidence upon which it could base an award of damages,[5] even if it could have found that Perin was not privileged to make the statements he did. The defamatory statement was spoken to one person, Tolbert, so that he could evaluate Walker and develop a marketing team for a venture that never transpired. Tolbert testified that he concluded that Walker could not recover on the basis that she suffered no damage.

5. Walker did present to the court two witnesses, who testified that Walker was depressed as a result of the statements. Since these statements were introduced for the purpose of Walker's discrimination claim only, outside of the jury's consideration, we cannot consider them for purposes of the defamation claim.

thought no less of Walker personally and that his opinion of her capabilities was unaffected by the defamation. There was no evidence that the words were repeated to anyone other than Tolbert or that they had any adverse effect on her job search. Walker did not testify that she suffered any adverse emotional reaction or that they impeded her ability to gain employment. These circumstances cannot, under Pennsylvania law, permit recovery for a slander *per se.*

Judgment notwithstanding the verdict should have been granted in favor of Perin and Grand Central. We therefore reverse the order of court and instruct the trial court to enter the JNOV.

## II. BREACH OF CONTRACT

 Perin also claims that no evidence supported the jury's $5,500 verdict for breach of contract. Walker claimed that Perin agreed to pay her certain commissions and vacation salary at the time of hiring. For the same reasons that we granted Perin relief above, we must deny him here; Walker's testimony and her demonstrative evidence provide a more than sufficient basis, even if not mathematically precise, upon which it could find that Perin was liable to Walker for a breach of contract in the amount of $5,500. We therefore affirm the trial court with respect to this issue.[6]

We affirm in part, reverse in part, and remand for entry of a judgment notwithstanding the verdict with regard to the jury's award for Walker's defamation claim. Jurisdiction is relinquished.

Dissenting Statement by JOHNSON, J.

6. We need not review Perin's remaining claims, whether the trial court should have severed Walker's discrimination claim because the jury could have been prejudiced by references to her race and whether the jury was prejudiced by a reference to Perin's brother's alleged drug use, as they are rendered moot by our findings regarding Walker's defamation claim above. The jury's consideration of the breach of contract action could not have been affected by the allegedly prejudicial comments.

JOHNSON, Judge, dissenting:

On this submitted appeal, I would affirm on the Opinion of the Honorable James C. Hogan. A plaintiff in Pennsylvania need not prove special damages or harm in order to recover. *See Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 483 A.2d 456 (1984). Judge Hogan properly viewed this to be a question for the jury. Accordingly, I must respectfully dissent.