Kent HANSEL and Service
Petroleum Bulk Inc.

v.

SHELL OIL CORPORATION.

Civil Action No. 95–3631.

United States District Court,
E.D. Pennsylvania.

Nov. 14, 1996.

**304**

Steven M. Kramer, New York City, for Plaintiff.

Mary F. Platt, Philadelphia, PA, for Defendant.

### MEMORANDUM & ORDER

DITTER, District Judge.

In their amended complaint, the plaintiffs assert breach of contract, Robinson–Patman Act, and defamation claims relating to the purchase of petroleum-based lubricants from the defendant, Shell Oil Corporation. The matter presently before me arises out of the plaintiffs' steadfast refusal to provide full, complete, and nonevasive answers to reasonable and proper interrogatories served upon them by Shell pursuant to Federal Rule of Civil Procedure 33(a). The interrogatories at issue requested basic information regarding the Robinson–Patman Act (interrogatories 6–9) and defamation (interrogatory 10(c)) counts.

Despite several informal requests to answer the interrogatories, two meetings with the Court,[1] a succession of orders demanding proper responses, and a warning that sanctions would be imposed unless the information was provided, (*see* Order of May 7, 1996), the plaintiffs produced only vague, evasive, confusing, and cryptic responses to some of the interrogatories and no responses to others. *See* Fed.R.Civ.P. 37(a)(3) (evasive or incomplete response treated as failure to respond). The plaintiffs' refusal to respond properly to the interrogatories especially prejudiced Shell because the plaintiffs' amended complaint is so skeletal, so lacking in factual averments, that Shell was forced to substantially rely on information requested in its interrogatories to determine the basis of the plaintiffs' claim and frame a discovery plan. (*See* Am.Compl. ¶¶ 15–19).

As a result of the plaintiffs' refusal to answer, pursuant to Federal Rule of Civil Procedure 37(d)(2), Shell moved to compel and for sanctions. That rule provides: "If a party ... fails ... to serve answers or objections to interrogatories submitted under Rule 33 after proper service of the interrogatories ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule." Actions allowed are, among other things, an order refusing to allow the disobedient party to support a claim, an ordering dismissing a claim, or an order requiring payment of attorneys' fees and expenses caused by the failure to answer. *See* Fed.R.Civ.P. 37(b)(2)(B), (C), (d).

I granted the motion and imposed the following sanctions against the plaintiffs. I dismissed with prejudice the Robinson–Patman Act claim, ordered the plaintiffs to pay Shell's reasonable expenses incurred in prosecuting the motion to compel and for sanctions, and forbad the plaintiffs from offering any evidence that they were damaged by Shell's alleged defamatory statement. (*See* Order of May 23, 1996, at 1). Prior to doing so, on May 17, 1996, I gave the plaintiffs one last chance to provide full, complete, and nonevasive answers to the interrogatories within 10 days. (*See* Order of May 7, 1996). Without notifying me, the plaintiffs served on Shell a document captioned "Plaintiff's supplemental answers to interrogatories." (Exs. 1, 2, Pls.' Br. Supp. Mot. for Recons.). Not

---

1. I referred Shell's motion to compel and for sanctions to United States Magistrate Judge Thomas J. Rueter. He met with the parties, granted the motion, and ordered the plaintiffs to provide full, complete, and accurate answers to the interrogatories. (Doc. # 17). I conducted a telephone conference with the parties on May 7, 1996, during which I instructed counsel for the plaintiffs to produce the requested information.

knowing that the plaintiffs had served that document, I sanctioned them. They now move that I reconsider the order imposing sanctions on the ground that their supplemental response fully and completely answered the interrogatories.

I have carefully examined the plaintiffs' supplemental response, reconsidered the imposition of sanctions, and will affirm my May 23, 1996, order. I conclude that while the plaintiffs' supplemental submission includes some limited, additional information, it clearly does not provide full, complete, and nonevasive answers to interrogatories 6–9 and 10(c). Even as to the most basic information, which the plaintiffs clearly possessed before filing their complaint, they repeatedly claimed that no response was necessary because either their competitors' or Shell's records contained the requested information. The discovery rules do not permit such a response and sanctions are therefore warranted.

█ Parties must provide true, explicit, responsive, complete, and candid answers to interrogatories. *See* Fed.R.Civ.P. 33(b)(1) (party must answer each interrogatory "fully"). If a party is unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and "set forth the efforts he used to obtain the information." *Milner v. National School of Health Tech.*, 73 F.R.D. 628, 632 (E.D.Pa.1977); 4A James W. Moore, *Moore's Federal Practice* ¶¶ 33.25, 33.26 (2d ed.1996). It is axiomatic that the purpose of discovery is to make a trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible," *United States v. Procter & Gamble*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958); *see also Dollar v. Long Mfg., Inc.*, 561 F.2d 613, 616 (5th Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978), as well as to narrow and clarify the issues in dispute. *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947). The plaintiffs repeatedly frustrated that purpose by refusing to answer Shell's proper interrogatories.

In order to succeed on their Robinson–Patman Act discriminatory pricing claim, the plaintiffs must show, among other things, that Shell discriminated in prices among different purchasers in the sale of lubricants of like grade and quality and that the effect of the discrimination may have been to lessen competition substantially, create a monopoly, or injure, destroy, or prevent competition with any person who either grants or receives the benefit of such discrimination. 15 U.S.C. § 13(a); *see also Stelwagon Mfg. Co. v. Tarmac Roofing*, 63 F.3d 1267, 1271 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1264, 134 L.Ed.2d 212 (1996).

There is no dispute that the information Shell requested regarding the Robinson–Patman Act claim in interrogatories 6–9 was either relevant or reasonably calculated to lead to admissible evidence. *See* Fed. R.Civ.P. 26(b)(1). Indeed, a review of the interrogatories establishes that Shell only requested basic information directly related to the allegations in the plaintiffs' amended complaint.

█ Specifically, interrogatory 6 sought the date of alleged discriminatory sales, names of buyers receiving the favorable prices from Shell, products sold, amounts of those products, prices charged the favored buyers, prices charged the plaintiffs, prices the favored buyers charged their customers, prices the plaintiffs charged their customers, and names of persons with knowledge of the facts used to answer the interrogatory. Simply put, Shell requested the basis for the plaintiffs' allegations in paragraphs 15 through 19 of the amended complaint that Shell charged the plaintiffs higher prices for lubricants than it charged other buyers.

The plaintiffs' initial response was to refuse to provide any information, stating that they could only produce it after "receiv[ing] all information from Shell concerning invoices and customer slips from the favored buyer, buyer(s)." Also, the plaintiffs did not describe the steps they took in attempting to obtain this information. *See Milner*, 73 F.R.D. at 632. That response was completely unacceptable. In their amended complaint, the plaintiffs alleged that "Shell dis-

criminated in price against the plaintiffs," (Am.Compl. ¶ 15), and "[p]laintiffs were forced to pay higher prices for lubricants than did their Shell competitors." (*Id.* ¶ 16). By signing the amended complaint, the plaintiffs and their attorney, Steven M. Kramer, Esquire, represented to me that there was "evidentiary support" for those allegations. *See* Fed.R.Civ.P. 11(b)(3). The plaintiffs were required to supply at least that "evidentiary support" in their answers; if they did not possess complete information, they were required to disclose the information possessed and specifically detail under oath the efforts they made to obtain the rest. *See* 4A Moore's Federal Practice ¶ 33.26.

The plaintiffs' supplemental submission is also inadequate, vague, cryptic, evasive, and completely lacking in the candid disclosure required of the parties. For example, in interrogatory 6(a), Shell requested the identity of the favored buyers. Such an interrogatory was fair game because the plaintiffs alleged that their "competitors" purchased Shell lubricants at prices lower than those available to the plaintiffs. (Am.Compl. ¶ 16). Despite that allegation and representation that they had "evidentiary support" for it, the plaintiffs failed to name those competitors explicitly, candidly, and completely. The plaintiffs identified four companies: Craft Oil, Posinello Fuels, Blue Ox, and NOCO; and provided limited information relating to sales of lubricants to them (which was requested in interrogatory 6(a)–(f)) in their response and an attached chart. However, the plaintiffs squarely contradicted that response just a few pages later by identifying two additional favored buyers, "Brewer Oil" and "Emerson," in their response to interrogatory 8.[2] Despite naming Brewer Oil and Emerson, the plaintiffs provided no other requested information about them.

Moreover, the plaintiffs' responses failed to identify fully the various products involved despite, as detailed above, alleging in the amended complaint that Shell discriminated against them in the pricing of lubricants. (Am.Compl. ¶¶ 15–16). The response to in-terrogatory 6 alludes to three, 10W–30 Fire & Ice, Rotella T15W–40, and Donax TD. However, the plaintiffs state that those are not the only products involved, but fail to identify the others. In their response to interrogatory 8, the plaintiffs claim that they have a "list of many" other products, but do not identify what they are, where the list is, that it will be produced, or who has knowledge of it. The plaintiffs represented to me that they have been in the lubricant business since at least 1988 and have purchased several million dollars worth of products from Shell. (Am.Compl. ¶¶ 2, 5). I find it utterly unbelievable that such a large and experienced company does not know such basic information as who its "competitors" are and what products it sells.

As to much of the other information they refused to provide in their response to interrogatory 6, the plaintiffs do not deny they possess it or claim that it would be unreasonable to produce it, but simply respond that it is contained either in Shell's or the favored buyers' records. (Pls.' Resp. to Interrogs. 6(a)–(c)). A party must either answer the interrogatory, object to it, state that it does not possess the information and detail the efforts made to obtain it, or, if the burden of discovering the information is substantially the same for both the requestor and the requested, specify which of the requested's business records contain responsive information. *See* Fed.R.Civ.P. 33(d). The plaintiffs responded to interrogatories 6(d) and (e) by referring to an October 4, 1995, production of documents labeled "invoices" and "pricing." That reference does not comply with Rule 33(d) because there is no indication which *specific* documents are responsive and because the plaintiffs supplied too little other information in their response to interrogatory 6, such as dates of sales, which would assist Shell in locating the responsive documents. Essentially, the plaintiffs required Shell to guess which sales the plaintiffs referred to in their amended complaint. Even if the responses to interrogatories 6(d) and (e) were proper, they do not cure the defects contained in the responses to the other sub-

---

**2.** This sort of gamesmanship is not allowed. A party served with interrogatories must answer each one *fully* and *separately, see* Fed.R.Civ.P. 33(b)(1), and may only incorporate other answers or documents if done so explicitly.

parts of interrogatory 6. For those reasons, the plaintiffs failed to comply.

■ Interrogatory 7 requested information regarding how the plaintiffs were damaged by the discriminatory sales. The plaintiffs initially claimed they were unable to give any response until they received "all copies of invoices and customer sales slips from favored buyer, buyer(s)." [3] In later responses, the plaintiffs claimed that they had produced unidentified documents showing their damages. As I explained earlier, these responses are not proper. I also conclude that the plaintiffs' initial responses claiming lack of knowledge are false. At the very least, the plaintiffs' own business records would give them some idea as to how much their sales or profits had decreased following the alleged discriminatory sales.[4] In the plaintiffs' brief in support of their motion for reconsideration, they claim damages of $32,-341.42 and refer to an attached chart. The brief is not signed or sworn to by the plaintiffs. The supplying of that figure in that form does not comply with Rule 33 because it is not under oath. *See* Fed.R.Civ.P. 33(b)(1). Further, the plaintiffs' vague reference to other documents is improper. Even assuming that the burden of calculating the plaintiffs' damages is substantially the same for both Shell and them, the plaintiffs' response is inadequate. Rule 33(d) requires more than a casual reference to other documents— the plaintiffs must specify "in sufficient detail to permit ... [Shell] to locate and to identify, as readily as can the ... [plaintiffs], the records from which the answer may be ascertained." [5]

■ In interrogatory 8, Shell sought information relating to how the plaintiffs determined that a particular favored buyer drew significant sales or profits from the plaintiffs. The plaintiffs' response is confusing, evasive, incomplete, and tends to show that the plaintiffs possess additional relevant information and documents which, for some unexplained reason, they have elected not to produce. First, despite apparently naming six favored buyers, the answer only provides information relating to two, Craft Oil and NOCO. Similarly, the documents referred to and provided with the supplemental response relate only to those two favored buyers. Second, the answer only relates to one product, 15W–40, despite the fact that the plaintiffs suggested in their response to interrogatory 6 that at least three products were involved. Also, the plaintiffs further undermined the reliability of their response by stating that this product is "only one bulk item in a list of many," without listing the others.

■ Interrogatory 9 requested information regarding how the plaintiffs determined that the discriminatory sales injured competition. In response, the plaintiffs gave two "examples" of injuries. They claimed that their going out of business gave other Shell jobbers additional business, that the remain-

---

3. That response suggests that the plaintiffs requested those documents from the favored buyers. Obviously, the plaintiffs had to know who the favored buyers were before requesting the documents, further undermining their claim of lack of knowledge in response to interrogatory 6.

4. Both the amended complaint and the plaintiffs' responses to interrogatories 6 and 8 support my conclusion that the plaintiffs possessed the requested information. According to the amended complaint, the plaintiffs purchased more than $800,000 worth of lubricants from Shell per year since 1988. (*Id.* ¶ 2). The amended complaint also stated that at some time the plaintiffs purchased approximately 300,000 gallons of lubricants from Shell. (*Id.* ¶ 18). Given that knowledge, it follows that the plaintiffs had some idea regarding the amount of money they lost when they could no longer purchase those lubricants. (*See also id.* ¶ 10). Also, in a chart referred to in their response to interrogatory 6, the plaintiffs claimed a "profit margin" of $28,208 relating to lost sales for three products. However, they do not provide any information on the other products involved. In their response to interrogatory 8, the plaintiffs claim they sold 26,877 gallons of Shell T15W–40 in 1994 for a profit of $18,012. Presumably, losing some or all of those sales would also result in lost profits in a corresponding amount. While this information is clearly not enough to allow Shell to calculate the plaintiffs' damages as to all products, it suggests that the plaintiffs possessed requested information that they refused to provide.

5. Indeed, this sentence was added to Rule 33 in 1980 to prevent parties from directing adversaries to a "mass of business records" or by making "all of their records available" in response to an interrogatory—the exact abusive practices in which the plaintiffs engaged. *See* Rule 33 advisory committee note, 1980 amendment.

ing jobbers charged higher prices, and that some customers complained of higher prices. The response identifies the six favored buyers listed in the response to interrogatory 8 as the recipients of the plaintiffs' lost business. However, the response purports to provide only "examples" of injuries to competition and is not complete. In addition, those examples provide no information on two of the favored buyers, Brewer Oil and Emerson, and do not identify the "customers" which· the plaintiffs claim complained about the higher prices the favored buyers charged.

The United States Court of Appeals for the Third Circuit requires district courts to consider the following factors before dismissing claims for a party's violation of discovery orders or rules:

> (1) The extent of the *party's* personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to ... respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.

*Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1148 (3d Cir.1990) (*citing Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 868 (3d Cir.1984)) (emphasis in original). I considered those factors in my May 23, 1996, order. I have reconsidered them and for the reasons stated in that order, find that dismissal of count two of the amended complaint is still warranted.

■ Finally, the plaintiffs' response to interrogatory 10(c) is typical of their improper conduct. In the interrogatory, Shell requested information relating to damages the plaintiffs suffered as a result of Shell's alleged defamatory statement. Prior to May 17, 1996, the plaintiffs took the position that they did not need to establish any actual damages because Shell's statement was slanderous *per se* and they could proceed under a presumed damages theory. There is considerable doubt as to whether such a theory is viable. *See, e.g., Walker v. Grand Central Sanita-*

*tion,* 430 Pa.Super. 236, 634 A.2d 237 (1993), *alloc. denied,* 539 Pa. 652, 651 A.2d 539 (1994); *Lieberman v. Gelstein,* 80 N.Y.2d 429, 590 N.Y.S.2d 857, 861 n. 1, 605 N.E.2d 344, 348 n. 1 (1992). Even if such a position were viable and the plaintiffs proceeded exclusively under it, they would still have to disclose the information requested in interrogatory 10(c) because it is reasonably calculated to lead to admissible evidence. For example, the information could lead to individuals to whom the statement had been published, a necessary element of a defamation claim. In their amended complaint, the plaintiffs claim the statement was published to one identified individual, "Mr. Brewer, Brewer Oil Co.," and unidentified "others." (*Id.* ¶ 22). Nonetheless, I did not dismiss the count, but merely directed the plaintiffs to proceed only under that theory by forbidding them from producing evidence relating to any actual damages they may have suffered.

Yet, despite the plaintiffs' representations that they would proceed only under that theory, in their May 17, 1996, supplemental response, they responded that Shell's alleged defamatory statements injured Plaintiff Hansel's social and professional reputation, and caused him physical and mental stress, embarrassment, sleepless nights, marital discord, and injured his professional reputation. The plaintiffs give no reason why it took so many months and so much effort to get them to produce this information. Given the nature of the information, the initial responses were incomplete because the plaintiffs clearly knew of the alleged damages shortly after the statement was made and well before they filed the complaint and responded to the interrogatories.

I have reconsidered my May 23, 1996, order. Because the plaintiffs supplemental response does not provide full and complete answers to interrogatories 6–9 and 10(c), upon reconsideration, I will affirm my order.

Also before me is Shell's motion for sanctions based on the plaintiffs' failure to appear at depositions noticed by fax on May 29, 1996, and scheduled for June 5, 1996. During an October 1, 1996, telephone conference, the parties informed me that counsel for Shell had deposed the plaintiffs. For that

reason, sanctions relating to the plaintiffs' depositions are unwarranted at this time and I will refuse to impose them.

An appropriate order follows.

### ORDER

AND NOW, this 14th day of November, 1996, it is hereby ordered that:

1. The plaintiffs' motion for reconsideration of my May 23, 1996, order is GRANTED. Upon reconsideration, that order is AFFIRMED.

2. The defendant's motion for sanctions relating to the plaintiffs' failure to attend oral depositions (doc. # 26) is DENIED.