SYNYGY, INC., Plaintiff,

v.

SCOTT–LEVIN, INC. and Leonard Vicciardo, Defendants.

No. Civ.A. 97–CV–6109.

United States District Court,
E.D. Pennsylvania.

June 4, 1999.

Richard M. Beck, Cynthia A. Clark, Morton Blanzburg, Abbe F. Fletman, Susan M. Dean, Klehr, Harrison, Harvey, Blanzsburg & Ellers, Philadelphia, PA, for plaintiff.

Larry M. Keller, Gary Green, Scott A. George, Siokoff Pincus. Green PC, Philadelphia, PA, for defendant.

## MEMORANDUM

ANITA B. BRODY, District Judge.

Plaintiff Synygy, Inc., formerly known as Simulate, Inc., is a corporation that provides software to pharmaceutical companies. Defendant Scott–Levin, Inc. ("Scott–Levin") is a corporation that sells data products and software to pharmaceutical companies. Defendant Leonard Vicciardo ("Vicciardo") is the Vice–President of Scott–Levin. Plaintiff brings this action against defendants under section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a), with pendent state law claims for commercial disparagement and defamation. As to each count plaintiff requests injunctive relief and damages. Before me is defendants' motion for summary judgment in which they argue that each of plaintiff's claims fail as a matter of law. I will grant defendants' motion on all claims.

Plaintiff originally based its claims on a slide shown by Vicciardo at a client conference and three oral statements uttered by Vicciardo contemporaneously with the showing of the slide. The three statements were that: (1) plaintiff deceives its customers by selling them services and software that do not do what plaintiff says they do; (2) plaintiff lies to its customers; and (3) plaintiff does not have the expertise required to perform its work. Complaint at ¶¶ 18, 26, 34. Plaintiff has offered no evidence that Vicciardo ever made these alleged oral statements and has chosen to abandon those particular claims by not addressing them in its response to defendants' summary judgment motion.

Through discovery, however, plaintiff has apparently uncovered other oral statements allegedly made in 1996 by defendants to one of plaintiff's customers.

Thus, I construe plaintiff's legal claims to be based on these new statements, and on the slide shown at the client conference in August of 1997.

## I. Background

The following account of the facts is derived from the record before me and is construed in the light most favorable to the nonmoving party, in this case, the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiff sold a software product known as Information Production and Distribution Systems ("IPDS") to the pharmaceutical industry. Plaintiff's response brief ("Pl.Resp.") at 3. The software is designed to enable the user to integrate data from different sources, such as data provided by Scott–Levin. *Id.* In 1995, plaintiff entered into a contract with Bristol Meyers Squibb, Inc. ("BMS"), a pharmaceutical company, whereby plaintiff would provide IPDS to BMS. BMS requested that plaintiff use a portion of defendant Scott–Levin's data along with plaintiff's software. So that plaintiff could use the Scott–Levin data, Scott–Levin agreed to prepare unencrypted data files, known as "flat files." Although the parties dispute the extent of the work required by Scott–Levin to ready the files for plaintiff, defendants claim to have been soured to plaintiff by the experience.

The gravamen of plaintiff's claim is that defendants maligned plaintiff causing plaintiff damage. Plaintiff's claims are based on three incidents or communications: two oral statements and one slide shown as part of a presentation. The two oral statements were (a) an oral statement allegedly made by Vicciardo in 1996; and (b) an oral statement allegedly made by Patrick Duffy, a Scott–Levin employee, in 1996. The slide was shown at a slide presentation delivered by Vicciardo at a Scott–Levin client conference in 1997. Pl.

Resp. at 4, 10–11. I will discuss each incident in turn.

### 1. *Oral Statements*

Plaintiff claims that defendants made oral statements to a common customer of both plaintiff and defendants, and that these statements caused plaintiff business harm. The statements were allegedly made in the fall of 1996 by Vicciardo, and Scott–Levin's client support representative, Patrick Duffy, to Zeneca Pharmaceutical, Inc. ("Zeneca"). Zeneca was a common customer of both plaintiff and defendant. Plaintiff avers that Vicciardo and Duffy told Zeneca about the problems Scott–Levin encountered with plaintiff during the BMS project, and that this caused Zeneca to sever its business relationship with plaintiff. Pl. Resp. at 4–5.

Plaintiff offers as evidence of these alleged statements two electronic mail transmissions ("e-mails"). The first e-mail is offered to prove that both Vicciardo and Duffy made defamatory statements. The second e-mail goes only to Duffy's alleged statements.

The first e-mail is from Jeff Magill, Vice President of plaintiff, to three other employees of plaintiff. Beck Decl. At Exhibit F. In this e-mail, Magill tells his three colleagues:

> "When [Mary Jo Newtown of Zeneca] spoke with [Vicciardo] earlier in the week, he said non-specific but troubling things about Simulate, causing Mary Jo to question Simulate's value to Zeneca (Pat Duffy, on the other hand, had specific, troubling things to say about us)." Beck Decl. at Exhibit F.

This is the only evidence plaintiff produced to support its claim that Vicciardo made defamatory statements about plaintiff to Zeneca.

The second e-mail that plaintiff submits as evidence is offered to prove that Duffy made defamatory statements about plaintiff to Zeneca. The e-mail was sent by

Duffy to Vicciardo.[1] In the e-mail, Duffy relates to Vicciardo a conversation he had with Zeneca representative Lorraine Jennings, in which he informed her that Scott–Levin had encountered problems with plaintiff in the past. The e-mail reads:

> I explained to [Lorraine Jennings of Zeneca] that we have a policy of not dealing directly with Simulate due to problems in the past. I described to her the problems we encountered with Simulate when they did a project for BMS including the fact that they changed file specs without informing BMS and then tried to blame us for all their conversion problems (which later proved to be Simulates [sic] problem). I also informed her that since then I have learned that Simulate left Glaxo with a non-functioning system.[2]

Beck Decl. at Exhibit E.

### 2. The Slide

The other basis for plaintiff's claims is a slide shown by defendant Vicciardo during a Scott–Levin client conference held on August 6, 7 and 8, 1997, in Baltimore, Maryland. Pl.Resp. at 11. At that conference, Vicciardo delivered a slide show presentation to representatives of pharmaceutical companies. Included in the presentation was the following slide:

> simulate—to assume the outward qualities or appearance of, often with the intent to deceive.
> Source: Webster's Ninth New Collegiate Dictionary

Nine slides prior to the slide in question, Vicciardo showed a slide that read:

> Competitor's claim:
> Call us today to find out how we can help you leap-frog over the labor-intensive information production processes

associated with tools like DATAVIEW and *Report Generator*.[3]

The language quoted as the "Competitor's claim" was taken from the plaintiff's 1996 marketing brochure. Plaintiff claims that "simulate" was a thinly veiled, defamatory reference to plaintiff, which, at the time of the conference was named Simulate, Inc. The publication of the slide to the audience, plaintiff asserts, caused plaintiff to lose business.

### II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any," which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

To determine whether summary judgment is appropriate, the district court judge must determine whether any genuine issue of material fact exists. An issue is "material" only if the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lob-*

---

1. The e-mail addressee was "SLA2post.kathy," but Duffy testified in his deposition that the addressee was, in fact, Vicciardo, through his secretary. Duffy Depo. (Vol.II), at 108, lines 14–16.

2. This e-mail is admissible as an admission. Fed.R.Evid. 801(d)(2).

3. "Report Generator" is a series of software programs offered by Scott–Levin.

*by, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" only if the evidence is such "that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Plaintiff brings claims for violations of the Lanham Act, along with pendent state claims for commercial disparagement and defamation.[4] I will address each legal claim, first as to the alleged oral statements to Zeneca and then as to the slide show.

## III. The Lanham Act

Plaintiff asserts a cause of action for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The statute states, in relevant part:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

■ The Court of Appeals for the Third Circuit has interpreted the Lanham Act to require a plaintiff to show that: 1) the defendant has made false or misleading statements as to his or her or another's product or services; 2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales and loss of good will. *U.S. Healthcare Inc. v. Blue Cross of Greater Phila.,* 898 F.2d 914, 922–23 (3d Cir.), *cert. denied,* 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990) (citing *Max Daetwyler Corp. v. Input Graphics, Inc.,* 545 F.Supp. 165, 171 (E.D.Pa.1982)) (citations omitted). To show entitlement to monetary damages under section 43(a), a plaintiff must show actual damages rather than a mere tendency to be damaged. *Rhone–Poulenc Rorer Pharmaceuticals, Inc. v. Marion Merrell Dow, Inc.,* 93 F.3d 511 (8th Cir.1996) (citing 15 U.S.C. § 1117(a)). Each element is essential to the claim and I will grant summary judgment if there is no material issue of fact as to any one of the elements.

### 1. Oral Statements

#### a. *Vicciardo's alleged oral statement to Zeneca*

The first essential element of a Lanham Act claim is that plaintiff must show that defendant made a false or misleading statement about his or another's product of services. *U.S. Healthcare,* 898 F.2d at 922. The only evidence plaintiff has offered, however, to show that Vicciardo made false or misleading statements about plaintiff to Zeneca is the e-mail written by Jeff Magill, Vice President of plaintiff, to three of his co-workers.

■ What is produced at the summary judgment stage must set forth evidence

---

4. Plaintiff also makes two procedural arguments in its response brief. First, plaintiff argues that the summary judgment motion was filed one day beyond the date set by my scheduling order. I will not skirt the legal issues in this case due to a minor filing delay. Second, plaintiff argues that defendants' summary judgment motion fails to comply with Rule 56 of the Federal Rules of Civil Procedure because defendants neglected to file an affidavit swearing to the accuracy of the supporting papers filed along with the motion. In response to plaintiff's objection, the defendants affixed a declaration of authenticity to its reply brief. I am satisfied that the defendants' exhibits are authentic and I will not use their technical misstep to avoid evaluating this case for summary judgment purposes.

"as would be admissible" at trial. Fed. R.Civ.P. 56(e). Hearsay evidence produced in an affidavit opposing summary judgment may be considered, however, if the out-of-court declarant could later present that evidence through direct testimony in a form that would be admissible at trial. *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 466, n. 12 (3d Cir.1989) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548).

■ The e-mail from Magill to his colleagues is hearsay, offered for the truth that Vicciardo said the things plaintiff claims he said. Plaintiff has not proffered the deposition testimony of Mary Jo Newton, the Zeneca representative to whom Vicciardo allegedly made the statements, to establish that Vicciardo made the alleged statement. Plaintiff has not shown that it will be able to present the evidence through direct testimony, i.e., in a form that would be admissible at trial. Therefore, I will not consider this e-mail.

Because the inadmissible e-mail is the only evidence plaintiff has produced to show that Vicciardo made false or misleading statements about plaintiff, I find that there is insufficient evidence to go to the trier of fact on this issue. There is no genuine issue of material fact as to whether Vicciardo made the defamatory statement. Accordingly, I will grant summary judgment in favor of defendants as to all claims [5] (Lanham Act, commercial disparagement, and defamation) based upon alleged statements by Vicciardo to Zeneca about plaintiff.

b. *Duffy's alleged statement to Zeneca*

The second basis for plaintiff's Lanham Act claim is that Duffy made a false or misleading statement to Zeneca. Plaintiff offers as evidence of this statement an e-mail by Duffy to Vicciardo.[6]

■ I find that Duffy's alleged oral statement does not fall within the ambit of the Lanham Act. The text of the statute prohibits false or misleading statements of fact "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Although "advertising" and "promotion" are not defined in the Lanham Act itself, courts have found "no indication that Congress, through its use of the language 'commercial advertising or promotion,' intended to extend Lanham Act coverage to every isolated alleged misrepresentation made to a potential customer by a business competitor." *Garland Co. v. Ecology Roof Sys. Corp.,* 895 F.Supp. 274 (D.Kan.1995); *see also Ditri v. Coldwell Banker Residential Affiliates, Inc.,* 954 F.2d 869, 872 (3d Cir.1992) (noting that Lanham Act applies only to claims of false representations in advertising). Commercial advertising or promotion for purposes of the Lanham Act consists of (1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) designed to influence customers to buy the defendant's products; (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry. *J & M Turner, Inc. v. Applied Bolting Technology Prod. Inc.,* 1997 WL 83766 (E.D.Pa.1997) (citations omitted); *see also Medical Graphics Corp. v. SensorMedics Corp.,* 872 F.Supp. 643 (D.Minn.1994) (holding that statements by a sales representative to one potential customer, despite plaintiff's argument that there may be many other such customers, did not constitute advertising or promotion); *American Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.,* 820 F.Supp. 1072 (N.D.Ill.1993) (finding that a single letter did not constitute commercial advertising

---

5. Both commercial disparagement and defamation claims, like the Lanham Act, require the plaintiff to prove that there was a statement made that was untrue, incorrect or defamatory. Because plaintiff has not produced any admissible evidence to show that Vicciar-
do made the alleged statement, all three claims based upon Vicciardo's alleged oral statement fail as a matter of law.

6. *See* Duffy's e-mail, *supra,* Section I.

or promotion); *but see Mobius Management Sys., Inc. v. Fourth Dimension Software, Inc.,* 880 F.Supp. 1005 (S.D.N.Y. 1994) (holding that a single letter addressed to a potential customer designed to discourage the customer from purchasing plaintiff's product did state a claim under the Lanham Act).

■ I find that Duffy's oral statement to a Zeneca representative does not meet the definition of commercial advertisement or promotion. It was isolated, individualized, informal and oral. The alleged comment was not made during the course of a commercial transaction, nor as a part of a promotion of defendant's product. Therefore, the statement is not actionable under the Lanham Act.

■ Even if such a statement were actionable under the Lanham Act, plaintiff does make out an essential element of the claim. The fifth element of a Lanham Act claim is that plaintiff must show a likelihood of injury to the plaintiff in terms of declining sales and loss of goodwill. *U.S. Healthcare,* 898 F.2d at 922–23. If, as in this case, the plaintiff is asking for money damages in addition to injunctive relief, however, the plaintiff must show actual damages. *Rhone–Poulenc Rorer Pharmaceuticals Inc.,* 93 F.3d at 515.

I find that plaintiff's claim also fails because it cannot prove that it suffered actual damages, or even a likelihood of damages, as a result of the alleged statement by Duffy. Plaintiff has not presented any evidence that Duffy's alleged statement caused any harm to plaintiff. Plaintiff submits, and indeed it is not disputed, that Zeneca is no longer a customer. However, there is no evidence whatsoever of a nexus between Duffy's statement and Zeneca's decision to discontinue business with plaintiff. To the

contrary, there is ample evidence that there was no causal relationship between the two. Duffy's statement was allegedly made in 1996. Plaintiff did not lose Zeneca as a customer until well over a year after Duffy's alleged statement. Further, there is unrefuted deposition testimony from Tom Lyons of Zeneca stating that Zeneca's decision to stop using plaintiff was unrelated to any statements by defendant. Lyons Depo. at 9–10.[7] I will grant summary judgment to defendants as to Duffy's statement under the Lanham Act.

**2. Slide shown at client conference**

■ Plaintiff also claims that the slide that Vicciardo showed at the Baltimore client conference in August of 1997 violated the Lanham Act. As prescribed by the Court of Appeals for the Third Circuit, the second element of a Lanham Act claim requires that there is an actual deception or at least a tendency to deceive a substantial portion of the intended audience. *U.S. Healthcare,* 898 F.2d at 922.

Plaintiff fails to satisfy this element of the claim. There is no evidence that the slide actually deceived or had a tendency to deceive a substantial portion of the client conference audience. By plaintiff's count, there were eighty-one representatives of approximately twenty-five different pharmaceutical companies at the conference. Pl. Resp. at 11. Yet plaintiff offers the testimony of only one attendee who understood the slide to be a reference to plaintiff. Jeffrey Wojcik of Wyeth–Ayerst Laboratories testified in his deposition that he remembered that plaintiff's name "came up" in the presentation. Wojcik Depo. at 10. He understood the slide to refer to plaintiff, *id.* at 36, but didn't understand why the name was mentioned,[8]

---

7. Q. Is there anything that anyone at Scott–Levin said to you ... that played any role in Zeneca's decision not to renew its contract with Simulate?
   A. No. It was an independent decision by Zeneca and its staff.

Lyons Depo. at 9, line 24, and at 10, lines 1–6.

8. Q. What is it that you remember that Lenny Vicciardo said about Simulate at the client meeting ...

*id.* at 17–18. I find that there is insufficient evidence that anyone in the audience, let alone a substantial portion of the crowd, actually was deceived or had a tendency to be deceived by the slide.

I also find that plaintiff fails to make out the fifth essential element of a Lanham Act claim for a likelihood of injury. The only evidence plaintiff offers as to damages is a document it created that shows that it suffered a decrease in profits for its Information Production and Distribution System in 1998. Beck Decl. at Exhibit "BB." While plaintiff may have suffered a decrease in profits, plaintiff tenders no evidence as to what caused that decrease. To the contrary, plaintiff cannot even tender a witness who specifically recalls defendant maligning plaintiff, let alone one who made a business decision based upon the slide. If no attendee can remember a false or misleading statement published at the conference, it is unlikely indeed that there would be a resulting injury.

Moreover, plaintiff offers no evidence to controvert testimony from Tom Lyons of Zeneca that directly refutes plaintiff's belief that defendants' alleged disparagement was a factor in Zeneca's business decision to no longer work with plaintiff. Lyons Depo. at 9–11. Finally, defendants note that plaintiff's president, Mark Stiffler, stated that he had no direct knowledge that plaintiff lost business due to what was shown or said at the client conference. Stiffler Depo. (Vol.I) at 80. Stiffler stated that his belief that defendants caused the business loss was based on a "feeling" that he had. *Id.* Stiffler also admitted that plaintiff's losses were attributable to other factors, specifically, factors that are the subject of a separate antitrust action by plaintiff against Scott–Levin. Stiffler Depo. (Vol.V) at 9–10.

I find that because plaintiff can offer no evidence of any nexus between the slide show and the decrease in profits, there is no genuine issue of material fact to go to a jury on the issue of whether this slide was likely to cause injury to the plaintiff.

■ In addition to failing to submit sufficient evidence of two essential elements of the Lanham Act claim, I find that the Lanham Act is an inappropriate cause of action to remedy any damage caused by the publication of this slide. As distinct from commercial disparagement and defamation, the Lanham Act is not a cause of action for maligning the company itself, but rather a remedy for misrepresentation in advertising about a particular product or commercial service. *U.S. Healthcare,* 898 F.2d at 921. Assuming *arguendo* that the slide referred to plaintiff, it was not a reference to any of plaintiff's products or services. The slide stated:

> simulate—to assume the outward qualities or appearance of, often with the intent to deceive.
>
> Source: Webster's Ninth New Collegiate Dictionary

I will not address whether or not the word "simulate" was a reference to plaintiff, but I do find that there is no reference, direct or indirect, to any of plaintiff's products or services in the slide. Therefore, this slide cannot provide a basis for a cognizable claim under the Lanham Act. *Id.*

For the above reasons, I grant defendants' motion for summary judgment as to the slide shown at the client conference, under the Lanham Act.

## IV. Commercial Disparagement

■ In addition to the federal Lanham Act claim, plaintiff brings a claim for the state law tort of commercial disparagement. In order to maintain an action for

---

A. I just remember he brought the name up and used some dictionary reference to it. I don't remember the term, the name, the words at all in the dictionary. And, again, I wondered why he was talking about it.

Q. Anything else you remember?
A. No.
Wojcik Depo. at 17.

disparagement under Pennsylvania law, the plaintiff must prove: 1) that the disparaging statement of fact is untrue or that the disparaging statement of opinion is incorrect; 2) that no privilege attaches to the statement; and 3) that the plaintiff suffered a direct pecuniary loss as the result of the disparagement. *Menefee v. Columbia Broad. Sys., Inc.*, 458 Pa. 46, 329 A.2d 216 (1974). A commercial disparagement action is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of its goods have reduced their marketability. *Swift Bros. v. Swift & Sons, Inc.*, 921 F.Supp. 267, 276 (E.D.Pa.1995).

### 1. *Duffy's alleged statement to Zeneca*

██ Plaintiff claims that Duffy's alleged statement to Zeneca constituted commercial disparagement. Pennsylvania law requires a plaintiff to show that it suffered a direct pecuniary loss as a result of the disparagement. *Menefee*, 329 A.2d at 220, Plaintiff fails to make out this essential element of commercial disparagement because plaintiff submitted no such evidence of damages caused by Duffy's alleged statement. Plaintiff makes only unsupported assertions in its summary judgment response brief that, as a result of Duffy's defamatory communications, Zeneca ceased doing business with plaintiff. Pl. Resp. at 13. As I discussed in the analysis of the Lanham Act claim, the mere fact that Zeneca is no longer plaintiff's customer is not evidence that Duffy's statement caused that loss. Plaintiff has failed to find a witness or documents to support that nexus. Moreover, plaintiff has not presented evidence to controvert the deposition testimony of Tom Lyons of Zeneca, which states that there was nothing that defendant ever said that influenced Zeneca's decision to create its own system and not renew its license with plaintiff. Lyons Depo. at 9–10. As a matter of law, without proof of pecuniary loss resulting from Duffy's alleged statement, plaintiff cannot recover under the law of commercial disparagement. By pointing to the absence of evidence in the record of this essential element of the claim, defendants have met their burden under *Celotex*, and I will grant summary judgment in their favor on this issue.

### 2. *Slide shown at client conference*

██ Plaintiff argues that the slide, shown to representatives from numerous pharmaceutical companies, commercially disparaged plaintiff and caused plaintiff to lose business. As stated above, Pennsylvania law requires plaintiff to show a direct pecuniary loss as a result of the commercial disparagement. *Menefee*, 329 A.2d at 220.

As with the Lanham Act claim, plaintiff does not offer evidence that the slide caused any damage to plaintiff. The record lacks any evidence of a causal relationship between the slide being shown and a business loss to plaintiff.

I find that because plaintiff can offer no evidence of any nexus between the slide show and the decrease in profits, there is no genuine issue of material fact to go to a jury on the issue of whether this slide resulted in any damage to the plaintiff. I grant defendants' motion for summary judgment as to the slide shown at the client conference, under commercial disparagement.

## V. Defamation

██ Finally, plaintiff claims that Duffy's alleged oral statements and the slide show defamed plaintiff. Under Pennsylvania law, to prevail in a defamation action, the plaintiff has the burden of proving 1) the defamatory character of the communication; 2) its publication by the defendant; 3) its application to the plaintiff; 4) an understanding by the reader or listener of its defamatory meaning; 5) an understanding by the reader or listener of an intent by the defendant that the statement refer to the plaintiff; 6) special harm resulting to the plaintiff from its publication; 7) abuse of a conditionally privileged occa-

sion. 42 Pa.Cons.Stat.Ann. § 8343(a)(1)–(7) (1998).

It is for the court to determine whether the statement at issue is capable of a defamatory meaning. *Corabi v. Curtis Publ. Co.,* 441 Pa. 432, 273 A.2d 899 (1971). A statement is defamatory if it "tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." *U.S. Healthcare,* 898 F.2d at 923. The court should assess "the effect the [statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Corabi,* 273 A.2d at 907.

Once a court determines that the statement is capable of defamatory meaning, one of the requirements under the Pennsylvania defamation statute is that the plaintiff prove that it suffered special harm. 42 Pa.Cons.Stat.Ann. § 8343(a)(6). Special harm requires proof of a specific monetary or out-of-pocket loss as a result of the defamation. *See* Restatement (Second) of Torts, § 575 (1976 Main Vol). A plaintiff can be relieved of the requirement of proving special damages, however, where spoken words constitute defamation (slander) *per se. Clemente v. Espinosa,* 749 F.Supp. 672, 677 (E.D.Pa.1990). Whether the words allegedly used by a defendant were defamatory *per se* is also a question for the court. *Fox v. Kahn,* 421 Pa. 563, 221 A.2d 181 (1966).

Defamation *per se* can be either "words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct." *Clemente,* 749 F.Supp. at 677. A statement is defamatory *per se* as an accusation of business misconduct if it " 'ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business.' " *Id.* at 677–78 (quoting Restatement (Second) of Torts § 573 (1977)). The statement must be more than mere general disparagement. It must be of the type that would be particularly harmful to an individual engaged in the plaintiff's business or profession. *Id.* at 678. A statement which is simply an expression of a negative opinion is not defamatory. *Walker v. Grand Cent. Sanitation, Inc.,* 430 Pa.Super. 236, 634 A.2d 237 (1993), *appeal denied,* 539 Pa. 652, 651 A.2d 539 (1994).

### 1. *Duffy's alleged statement to Zeneca*

Plaintiff avers that Duffy made defamatory statements o Zeneca. The only evidence of those statements is an e-mail from Duffy to Vicciardo, which bears restating:

> I described to her the problems we encountered with Simulate when they did a project for BMS including the fact that they changed file specs without informing BMS and then tried to blame us for all their conversion problems (which later proved to be Simulates [sic] problem). I also informed her that since then I have learned that Simulate left Glaxo with a non-functioning system.

Beck Decl. at Exhibit E.

As a threshold matter, I find that Duffy's alleged statement to the Zeneca representative is capable of a defamatory meaning. I find, in particular, that the allegation that Duffy told the Zeneca representative that plaintiff "changed the file specs without informing BMS and then tried to blame [Scott–Levin] for all their conversion problems...." if actually said, would tend to harm the reputation of plaintiff so as to constitute defamation.

Once the court determines that the statement is capable of defamatory meaning, the plaintiff must prove special harm as a result of the alleged defamation. In this case, however, plaintiff argues that the alleged statement constitutes defamation *per se,* which relieves plaintiff of the burden of proving special damages normally required under the law. *Clemente,* 749 F.Supp. at 677.

■ Assuming *arguendo* that Duffy's alleged statement to the Zeneca representative does constitute defamation *per se*,[9] relieving plaintiff of the burden of proving special damages, plaintiff's claim would still fail because plaintiff has not shown general damages—proof that one's reputation was actually affected by the slander or that one suffered personal humiliation. *Walker*, at 246, 634 A.2d at 242.

At common law, if a plaintiff's claim was for defamation *per se*, he or she did not have to prove any actual harm; damages were presumed. Restatement (Second) of Torts § 621. Presuming damages left juries in the awkward position of awarding damages without any criteria with which to measure harm.[10] Concern over juries considering impermissible factors such as the defendant's wealth or the unpopularity of the views expressed loomed large. *See* David A. Anderson, Reputation, Compensation, and Proof, 25 Wm. & Mary L.Rev. 747, 749 (1984) ("[a] number of evils flow from the anomaly of presumed damages.").

The Restatement (Second) of Torts, however, remedied this problem by requiring a plaintiff in a defamation *per se* action to make a showing of general damage, i.e., proof of reputational harm. Restatement (Second) of Torts § 621. In the *Walker* case, the Pennsylvania Superior Court held that Section 621 of the Restatement (Second) of Torts accurately states the law of Pennsylvania in requiring a showing of general damages in defamation *per se* cases.[11] *See also Pyle v. Meritor Sav.*

---

9. There is a dearth of cases on the issue of whether disparaging words about a corporation are actionable *per se*. Given the scant treatment of the subject, I will not find that Duffy's alleged statement is not defamation *per se*. However, I have serious reservations about whether the doctrine of defamation *per se* is appropriately applied to corporate entities.

The doctrine of defamation *per se* was developed out of a need to provide a remedy for a person whose reputation was damaged by the very utterance of the defamatory words, even though the person could not point to a specific pecuniary loss. *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068 (W.D.Ky.1995). *See also* Prosser and Keaton on Torts, Ch. 19, § 112 (5th ed.1984). The rationale behind defamation *per se* loses its force, however, when the victim is a corporation rather than an individual. As stated so adeptly by the Honorable John G. Heyburn, II:

The concept [of defamation *per se*] makes a great deal of sense in a personal context. So far as the Court can tell, considerably less thought has been devoted to applying these concepts to the entirely different setting of business relationships and corporate competition. Businesses do not have personalities that are hurt so intangibly. If a business is damaged, the damage is usually reflected in the loss of revenues or profits. Therefore, courts should be very cautious about labeling as defamation *per se* comments made about a corporation or its products.

*CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. at 1084.

The categories that make up defamation *per se* speak volumes about to whom the doctrine was intended to apply. Criminal offense, loathsome disease, business misconduct, serious sexual misconduct: these are allegations that would cause enormous personal humiliation and embarrassment to a human being, not a corporation. A corporation, however, cannot be embarrassed or humiliated. A corporation's analogue to humiliation would be damage to reputation—an injury that should translate into a pecuniary loss. If a corporation cannot point to loss of revenues or profits, for what are we compensating it? Should the law allow corporations to avoid showing special harm by taking advantage of an exception so clearly created to protect individuals? The rule of defamation *per se* as it applies to corporations has outrun its reason.

10. Presumed damages present a much greater problem for juries than damages for pain and suffering. Although putting a price tag on a plaintiff's pain and suffering is challenging, given the intangible nature of that type of injury, plaintiff is still required to put on evidence of that harm in order to give the trier of fact some basis for the award. With presumed damages, because the plaintiff is not required to prove any sort of harm, the jury is put in the untenable position of assigning a dollar value to a harm about which it has heard no evidence.

11. The *Walker* court admitted that there was little guidance from the Pennsylvania Supreme Court on the subject, but did find support for the position that damages were not presumed in defamation *per se* cases in *Solosko v. Paxton*, 383 Pa. 419, 119 A.2d 230

*Bank,* 1996 WL 115048, *3 (E.D.Pa.1996) ("In a defamation *per se* case . . . a plaintiff must prove general damages from a defamatory publication and cannot rely upon presumed damages."); *Protocomm Corp. v. Fluent, Inc.,* 1994 WL 719674, *11 (E.D.Pa.1994) ("In Pennsylvania, a complainant who pleads slander *per se* . . . must prove general damages to recover compensation."). This conforms with Pennsylvania's tendency to adopt the Restatement with respect to defamation. *Walker,* 634 A.2d at 244 (citing *Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 483 A.2d 456, 473 (1984) ("First, to adopt section 569 is in line with Pennsylvania's general tendency to follow the Restatement rule in defamation law.")). *See also Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 37, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) ("Pennsylvania's libel law tracks almost precisely the Restatement (First) of Torts provisions on the subject.").

Pennsylvania is not alone in adopting the Restatement (Second) of Torts on the issue of general damages. *See Arthaud v. Mutual of Omaha Ins.,* 170 F.3d 860, 862 (8th Cir.1999) ("Missouri courts require a showing of actual damages in all defamation cases."); *United Ins. Co. of America v. Murphy,* 331 Ark. 364, 961 S.W.2d 752, 756 (1998) (Arnold, C.J.,) ("From the date of this opinion forward, we hold that a plaintiff in a defamation case must prove reputational injury in order to recover damages."); *Ryan v. Herald Ass'n., Inc.,* 152 Vt. 275, 566 A.2d 1316 (1989); *Marchiondo v. Brown,* 98 N.M. 394, 649 P.2d 462 (1982).

I find the reasoning set out by the Pennsylvania Superior Court in *Walker* persuasive and convincing, and hold that plaintiff must show general damages where the alleged defamation is *per se.*

In this case, plaintiff has not produced any evidence of general damages. There is no testimony from Zeneca's representatives that their opinion of plaintiff was negatively affected by Duffy's alleged statement, no evidence that the words were repeated to anyone other than Mary Jo Newtown, no evidence that plaintiff suffered humiliation (if indeed a corporation can suffer so), and no evidence that the statement affected the business relationship between plaintiff and Zeneca. Plaintiff has not produced evidence of general damages so as to permit recovery under defamation *per se.*

For the above reasons, I find that defendants are entitled to summary judgment because there is no genuine issue of material fact regarding an essential element of the plaintiff's defamation claim.

### 2. *Slide shown at client conference*

■ Plaintiff also claims that the slide shown at the client conference was defamatory. Under Pennsylvania law, the fourth element of a defamation claim is that the reader or listener understand the defamatory meaning. 42 Pa.Cons.Stat. Ann. § 8343(a)(4). Plaintiff fails to satisfy this essential element.

As I discussed in the Lanham Act analysis, plaintiff offers only one conference attendee out of eighty-one who even connected the slide with plaintiff. That one attendee was not able to recall what the slide said about plaintiff, beyond the fact that there was a dictionary definition used. There is simply not sufficient evidence

(1956). In *Solosko,* the plaintiff sued a man for accusing him of being a communist. The jury returned a verdict in favor of the plaintiff for $10,000 and the defendant appealed claiming that the plaintiff failed to prove special damage. The court stated that special damages were not required when the slander was *per se.* The court, however, made a crucial holding that the jury verdict "under all the circumstances presented in [the] record,"

was excessive. *Walker,* 634 A.2d at 243 (quoting *Solosko,* 119 A.2d at 233). The court then ordered a remittitur of $6,500. The Superior Court noted that the Supreme Court's act of evaluating the legitimacy of the damage amount, calls into question the validity of presumed damages in Pennsylvania. If damages were truly presumed, the court could not find them excessive, for there would be nothing upon which to base that assessment.

that any person in the audience understood the slide as defamatory. Although the issue of what the audience understood is normally an issue for the jury, *Gordon v. Lancaster Osteopathic Hosp. Ass'n,* 340 Pa.Super. 253, 489 A.2d 1364 (1985), there is no evidence that anyone understood the slide to say anything defamatory about plaintiff. There is insufficient evidence to go to the jury on this essential element of defamation.

Plaintiff also fails to prove the sixth element of a defamation claim—special harm. 42 Pa.Cons.Stat.Ann. § 8343(a)(6). The slide shown at the conference cannot constitute defamation *per se.* The slide did not facially defame plaintiff. The only text on the slide was the Webster's Dictionary definition of the word "simulate." Although the absence of plaintiff's name in the slide is not dispositive, *Cosgrove Studio & Camera Shop, Inc. v. Pane,* 408 Pa. 314, 182 A.2d 751, 753 (1962), the link between an assertion of plaintiff's business misconduct and the dictionary definition of "simulate" is simply too attenuated to support a claim of defamation *per se.*

Because plaintiff does not make out a claim of defamation *per se,* it must prove special damages, that is, specific pecuniary loss, as a result of the slide's projection. While special damages need not be established with a mathematical certainty, they do require a showing of a specific item of damage resulting from the publication. *Fogel v. Forbes, Inc.,* 500 F.Supp. 1081 (E.D.Pa.1980).

As stated above, the document showing a decline in sales is not evidence of causation. Plaintiff has offered no more than plaintiff's president's self-proclaimed unsubstantiated belief that the decline in business can be attributed to the defendants actions. Stiffler Depo. (Vol.I) at 80–81. The plaintiff, being unable to prove special harm or special damage, cannot establish an essential element of defamation under Pennsylvania law. Summary judgment is granted as to the slide under defamation.

## VII. Conclusion

For the reasons explained above, I will grant defendants' motion for summary judgment as to all claims.